LINKS: 109, 110, 111, 116, 118, 119, 122, 126, 136

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION | Case No. 2:11-ML-02265-MRP (MANx) |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br>v.<br>COUNTRYWIDE FINANCIAL CORPORATION, et al.,<br><br>Defendants. | Case No. 2:11-CV-10414 MRP (MANx)<br><br>**AMENDED ORDER RE MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION & BACKGROUND

This case has been transferred to the Court for pre-trial proceedings as part of Multidistrict Litigation No. 2265, captioned *In re Countrywide Financial Corp. Mortgage-Backed Securities Litigation* ("the MDL"). Plaintiff, Massachusetts Mutual Life Insurance Company ("Plaintiff" or "MassMutual") is a Massachusetts-based financial services company. MassMutual purchased a number of residential mortgage-backed security ("RMBS") Certificates between 2005 and 2007.[1] First Amended Complaint ("FAC") ¶ 72. MassMutual alleges that the sale of those Certificates violated the Massachusetts Uniform Securities Act ("MUSA") because the Offering Documents contained untrue statements and omitted material facts. FAC ¶ 1. MassMutual has sued Countrywide Home Loans ("CHL"), CWMBS, CWALT, CWABS, CWHEQ,[2] Countrywide Securities Corp. ("CSC"), J.P. Morgan Securities LLC (f/k/a J.P. Morgan Securities Inc.), Deutsche Bank Securities, Inc., and UBS Securities LLC[3] as primary violators under Massachusetts General Laws, Chapter 110A, Section 410(a)(2) ("Section 410(a)(2)"). FAC ¶¶ 544–53. MassMutual has alleged that Countrywide Financial Corp. ("CFC"), CWMBS, CWABS, CWALT, CWHEQ, Angelo Mozilo, David Sambol, Eric Sieracki, Stanford Kurland, David Spector, N. Joshua Adler, Ranjit

---

[1] A Certificate is a document that shows ownership of a mortgage-backed security issued pursuant to a registration statement and prospectus supplement in a public offering. Each Certificate represents a particular tranche within an offering. Because "Certificate" refers to the document evidencing ownership of a specific tranche, the Court uses the terms "tranche" and "Certificate" somewhat interchangeably. An Offering refers to the process by which the Certificates were sold to Plaintiffs. The Offering Documents refer to the Registration Statements, Prospectuses and Prospectus Supplements, Term Sheets, and other written materials pursuant to which the Certificates were offered.

[2] The Court refers to CWMBS, CWALT, CWABS, and CWHEQ collectively as the "Depositor Defendants" or the "Depositors."

[3] The Court refers to CSC, J.P. Morgan Securities LLC, Deutsche Bank Securities, Inc., and UBS Securities LLC collectively as the "Underwriter Defendants."

Kripalani, and Jennifer Sandefur[4] are liable as control persons under Massachusetts General Laws, Chapter 110A, Section 410(b) ("Section 410(b)"). FAC ¶¶ 554–79. MassMutual alleges that Bank of America Corp. is liable as successor-in-interest to CFC, CSC, CHL, CWABS, CWMBS, CWALT, and CWHEQ. FAC ¶¶ 551, 579.

At the Court's direction, Defendants filed motions to dismiss based on timeliness, standing, and jurisdiction, with all other potential grounds reserved for later briefing. The issues of timeliness, standing, and jurisdiction have been fully briefed and the Court heard oral argument on April 9, 2012. Additionally, the transferor court recently addressed many of these issues in a detailed order governing several other MassMutual-filed RMBS cases. *Mass. Mutual Life Ins. Co. v. Residential Funding Co.*, No. 11-cv-30035-MAP, 2012 WL 479106 (D. Mass. Feb. 14, 2012) ("*MassMutual*"). Except on the issue of personal jurisdiction, this ruling echoes the outcome of the *MassMutual* decision, and the Court relies on Judge Ponsor's detailed analysis throughout this Order.

Having considered the issues, the Court has concluded that only the Underwriter Defendants sold a security to MassMutual as required in a Section 410(a)(2) action. The Court therefore **DISMISSES** the Section 410(a)(2) claims except as to the Underwriter Defendants. Dismissal is **WITH PREJUDICE**. MassMutual does not have standing to pursue claims against Kurland with respect to Certificates that CSC did not underwrite or that CSC underwrote after Kurland's departure from Countrywide. The Court therefore **DISMISSES** the claims against Kurland except as to Certificates that CSC underwrote while Kurland was employed by Countrywide. Dismissal is **WITHOUT PREJUDICE**. The Court may not exercise jurisdiction over Mozilo, Sambol, Sieracki, Spector, Adler, Kripalani, or Sandefur. The Court therefore **DISMISSES** all claims against those

---

[4] The Court refers to Mozilo, Sambol, Sieracki, Kurland, Spector, Adler, Kripalani, and Sandefur collectively as the "Individual Defendants."

defendants. Dismissal is **WITH PREJUDICE**. The Court otherwise **DENIES** Defendants' motions.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiff's allegations, the complaint fails to state a claim for which relief can be granted. *See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations to be true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

To the extent that federal law is relevant, the Court will follow Ninth Circuit precedent. *Newton v. Thomason,* 22 F.3d 1455, 1460 (9th Cir. 1994). Because the case was originally filed in Massachusetts, the Court applies the substantive law of Massachusetts, including Massachusetts choice-of-law rules. *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1492 (9th Cir. 1985).

## III. DISCUSSION

**A. TIMELINESS**

Defendants have moved to dismiss the FAC on the grounds that it is untimely. Plaintiff filed its original complaint on September 1, 2011. ECF No. 1. The Court must first determine whether to apply Massachusetts' or California's limitations period, and then must determine whether the claims are timely under that particular period.

### 1. MUSA's Four-Year Statute of Limitations Applies to Plaintiff's Claims

Plaintiff has brought its claim under the Massachusetts Blue Sky law, MUSA. MUSA contains a four-year statute of limitations, but Defendants argue that the Court should apply California's shorter limitations period. Plaintiff objects that choice-of-law analysis is inappropriate in the context of Blue Sky laws.

It is axiomatic that a conflict-of-law analysis requires an actual conflict between the laws of two jurisdictions. MassMutual argues that Blue Sky laws are non-exclusive and that, because it was free to elect its remedy and sue under California's Blue Sky law, Massachusetts' Blue Sky law, or both, no conflict between them exists. The Court agrees.

The growing weight of authority indicates that Blue Sky laws are additive rather than exclusive. *See, e.g.*, *Lintz v. Carey Manor Ltd.*, 613 F. Supp. 543, 551 (W.D. Va. 1985) ("Just as the same act can violate both federal and state law simultaneously, or a state statute as well as state common law, so too can it violate several Blue Sky laws simultaneously."); *Simms Inv. Co. v. E.F. Hutton & Co.*, 699 F. Supp. 543, 546 (M.D.N.C. 1988) ("[T]he securities laws of two or more states may be applicable to a single transaction without presenting a conflict of laws question."); *Barneby v. E.F. Hutton & Co.*, 715 F. Supp. 1512, 1536 (M.D. Fla 1989) ("[N]o reason to apply a traditional conflicts of laws analysis" when suit was brought under a state Blue Sky law.); *Chrysler Capital Corp. v. Century Power Corp.*, No. 91 Civ. 1937, 1992 WL 163006, at *2 (S.D.N.Y. June 24, 1992) ("[B]ecause application of multiple state securities laws to a single securities transaction does not present a conflict of laws issue, [defendant]'s argument that only New York law may apply to the transaction at issue is rejected."); *United Heritage Life Ins. Co. v. First Matrix Investor Services*, No. CV 06-0496, 2009 WL 3229374, at *4 (D. Idaho Sept. 30, 2009) ("[M]ore than one state's securities laws can apply to a transaction."). These holdings are predicated on the notion that Blue Sky laws are designed to regulate securities transactions within (or impacting)

a particular state. If a transaction touches multiple states, it follows that multiple Blue Sky laws may apply simultaneously. The Court agrees with the majority view that a plaintiff may sue under the securities laws of several states at once so long as the requirements of each state's law are met.

If Blue Sky laws are additive, as even Defendants seem to admit,[5] then multiple laws may be at issue simultaneously. It would not be the role of the Court to reconcile differences between them, but rather to give full effect to each. *See Lintz*, 613 F. Supp. at 551 (no need to reconcile different statutes of limitation in state Blue Sky laws). MassMutual was entitled to elect its remedy, and it chose to sue under MUSA. The California Blue Sky law (and its statute of limitations) is therefore not at issue in this case. If it were, it would be as an additional (rather than alternative) basis for liability.

The purpose of a conflict-of-laws analysis is to provide clarity and uniformity when the laws of multiple states lay claim to a single issue or cause of action. Because the California and Massachusetts Blue Sky laws are non-exclusive, there is no conflict between them. The California Blue Sky law's statute of limitations no more reads on a MUSA action than Section 13 of the Securities Act (providing a one year statute of limitations for Section 11 claims) could be imported into a 10b-5 claim merely because the facts would have also supported a Section 11 claim. Because there is no conflict of laws to resolve, the Court will apply MUSA's statute of limitations to MassMutual's claim.

2. *The Claims Are Timely Under MUSA's Four-Year Statute of Limitations*

A MUSA claim must be brought within four years "after the discovery by the person bringing the action of a violation of this chapter." Massachusetts General Laws, Chapter 110A, Section 410(e) ("Section 410(e)"). Inquiry notice is

---

[5] Defendants implicitly address the point, calling it a "non-controversial proposition that more than one law can apply to a particular set of facts." CW Reply at 6.

1  sufficient to satisfy the "discovery" requirement.  *Marram v. Kobrick Offshore*
2  *Fund, Ltd.*, 442 Mass. 43, 55 n.20 (2004).  Plaintiff filed its original complaint on
3  September 1, 2011.  Its claims are therefore untimely if "a reasonable investor
4  would have noticed something was amiss" on or before August 31, 2007.[6]  *Id.*
5  Defendants argue that a reasonably diligent investor would have "noticed
6  something was amiss" based on widespread press reports regarding "increasing
7  defaults, delinquencies, and foreclosures" (CW Memo at 19), "lax underwriting"
8  (CW Memo at 23), "appraisers who had allegedly been pressured to inflate
9  appraisals" (CW Memo at 26), and "the prevalence of borrower fraud respecting
10  representations that a mortgaged property would be their primary residence."  CW
11  Memo at 27.

12       The Court has spent much of the last year determining, with ever finer
13  gradation, when a reasonably diligent investor should have been aware of
14  misrepresentations in the Offering Documents of Countrywide-issued RMBS.  In
15  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125,
16  1140–41 (C.D. Cal. 2011) ("*Stichting*"), the Court found that inquiry notice was
17  triggered at least by February 14, 2008.  In *Allstate Ins. Co. v. Countrywide Fin.*
18  *Corp.*, No. 11-cv-05236, 2011 WL 5067128, at *14 (C.D. Cal. Oct. 21, 2011)
19  ("*Allstate*:"), the Court found that December 27, 2007 was too early to start the
20  clock running without discovery.[7]

21       Both *Allstate* and *Stichting* were fraud cases, and therefore involved a
22  scienter element not present here.  The Court is considering inquiry notice, defined

---

[6] Due to a tolling agreement between Plaintiff and some parties, the operative date for those parties is April 10, 2007.  Because the Court denies Defendants' motions based on the August 31, 2007 date, it is unnecessary to consider the April 10, 2007 date at this time.

[7] *Allstate* was determined under Illinois law, and so the legal standard was slightly different than inquiry notice.  Those differences are not material for purposes of this motion.

as "when a reasonable investor would have noticed something was amiss." *Marram*, 442 Mass. at 55 n.20. Discovery of misrepresentations in the Offering Documents (or storm warnings of misrepresentations in the Offering Documents) counts as "something amiss." Such discovery therefore triggers inquiry notice for either a fraud or MUSA claim. Because discovery of misrepresentations in the Offering Documents would have triggered inquiry notice for either a fraud or a MUSA claim, the Court will adhere to the framework it developed in *Allstate* and *Stichting*. By early 2008, the rash of lawsuits, press reports, and publicly filed documents should have **alerted** a reasonable investor to any problems with loan origination at Countrywide, that the Offering Documents may have misrepresented Countrywide's origination and appraisal practices, and that those misrepresentations might impact the value of even AAA-rated Certificates. *Stichting*, 802 F. Supp. 2d at 1140–41. In *Stichting* and *Allstate*, The Court was comfortable making that determination on a 12(b)(6) motion because of the prolific and detailed nature of the public documents cited by the defendants. Those documents revealed not only higher-than-anticipated delinquencies and defaults but suggested that those delinquencies and defaults were related to unexpectedly lax underwriting standards.

      Defendants have cited a number of articles from 2007 that either make or hint at this same connection. As in *Allstate* it is possible, perhaps probable, that Defendants will ultimately demonstrate that a reasonable investor was on inquiry notice by August 31, 2007. However, 2007 was a turbulent time during which the causes, consequences, and interrelated natures of the housing downturn and subprime crisis were still being worked out. The Court cannot, based solely on the FAC and judicially noticeable documents, conclude that by August 31, 2007 a reasonably diligent investor should have linked increased defaults and delinquencies in the loan pools underlying the Certificates with both a failure to follow the underwriting and appraisal guidelines specified in the Offering

Documents and the possibility that the tranches purchased by MassMutual would suffer losses.  That is the link that a reasonable investor would have needed to make in order to know that something material was amiss with the Offering Documents for the particular tranches that are at issue in this case.  Accordingly, the Court **DENIES** Defendants' motions to dismiss based on the statute of limitations.

B. STATUTORY STANDING

*1.     Section 410(a)(2) Liability*

Section 410(a)(2) provides that a person "who offers or sells a security . . . is liable to the person buying the security from him." Section 410(a)(2).  CHL and the Depositors object that they did not "offer or sell" the Certificates to MassMutual and that they are therefore not liable.

Section **4**10(a)(2) is based on Section 12(a)(2) of the Securities Act, and is interpreted in coordination with its federal counterpart.  *Marram*, 442 Mass. at 50–51 ("The Legislature has directed that we interpret the [MUSA] in coordination with the Securities Act of 1933."); *Adams v. Hyannis Harborview, Inc.*, 838 F. Supp. 676, 686 (D. Mass. 1993) ("To prevail on a claim brought under Section 12(2) (*and also therefore under M.G.L. c. 110A, § 410(a)(2))* a plaintiff must show that [] the defendant was a 'seller'") (emphasis added).  *MassMutual*, 2012 WL 479106, at *8 (looking to federal law to define "seller").

Section 12(a)(2) liability (and therefore Section **4**10(a)(2) liability) is limited to "two narrow classes of defendants: (1) immediate sellers ('remote purchasers are precluded from bringing actions against remote sellers'); and (2) those who solicit purchases to serve their 'own financial interests or those of the securities owner.'" *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-CV-00302-MRP (MANx), 2011 WL 4389689, at *9 (C.D. Cal. May 5, 2011) (quoting *Pinter v. Dahl*, 486 U.S. 622, 644 n. 21 (1988)) ("*Maine State*").  MassMutual concedes that CHL and the Depositors did not directly transfer title, but argues that they solicited

9

the purchases to further their own financial interests. Opp. to CW Mot. at 33–36. MassMutual argues that CHL and the Depositors solicited purchases by creating the Certificates and helping draft the Certificates' marketing materials. *Id.* at 34. MassMutual further asserts that CHL and the Depositors' financial interests were uniquely at stake because of their affiliation with CSC. *Id.*

The Court dismissed identical federal allegations in *Maine State* because the plaintiffs failed to include "specific allegations of solicitation, including direct communication with Plaintiffs." *Maine State*, 2011 WL 4389689, at *10 (citing *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003); *In re Westinghouse Secs. Litig.*, 90 F.3d at 717; *In re Thornburg Mortg., Inc. Secs. Litig.*, 695 F. Supp. 2d 1165, 1220–21 (D.N.M. 2010)). Judge Ponsor in Massachusetts did the same. *MassMutual*, 2012 WL 479106, at *9–10. The FAC makes clear that CHL and the Depositors were involved in the process, but it does not allege that they had any direct contact with MassMutual or otherwise directly solicited MassMutual. As the Supreme Court stated in *Pinter*, "[b]eing merely a 'substantial factor' in causing the sale of unregistered securities is not sufficient in itself to render a defendant liable." *Pinter*, 486 U.S. at 654. Rather, a Section 12(a)(2) plaintiff must allege a relationship between the plaintiff and defendant. *MassMutual*, 2012 WL 479106, at *9 (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996). MassMutual has not alleged that it had any direct relationship with CHL or the Depositors. Accordingly, the Court **DISMISSES** Cause of Action One as against CHL, CWMBS, CWALT, CWABS, and CWHEQ. Dismissal is **WITH PREJUDICE**.

2. *Section 410(b) Liability*

The Court has dismissed the primary liability claims against CHL and the Depositors. The control person claims must therefore be dismissed to the extent that those claims are premised on control of CHL or the Depositors. *Accord MassMutual*, 2012 WL 479106, at *10. MassMutual's primary liability claim

against CSC survives.  MassMutual has alleged that CFC controlled CSC (FAC ¶ 557), and that each of the Individual Defendants had some role in overseeing or managing either CSC or CFC.  Opp. to Off. Defs' Mot. at 4–7.  To the extent that those defendants are not dismissed for lack of jurisdiction, the Court will address the adequacy of MassMutual's control person allegations in the second round of briefing.  For the time being, the Individual Defendants' motions to dismiss Cause of Action Two for failure to state a primary liability claim is **DENIED**.

3.     Kurland

Stanford Kurland additionally moves to dismiss the claims against him with respect to all but the Certificates underwritten by CSC (the only entity he is alleged to have controlled) while he was employed **at Countrywide**.  MassMutual responds with the baffling argument that it is not appropriate to "sort this out" at the pleading stage.  Opp. to Off. Defs' Mot. at 9 n.4.  The Court disagrees; a 12(b)(6) motion is precisely the time to narrow a case by stripping out those claims that are not supported by well-pleaded facts.

MassMutual's only claim against Kurland is for a violation of Section 410(b) based on his alleged indirect control of CSC.  The FAC does not allege that Kurland controlled UBS or any of the other Underwriter Defendants.  And nothing in the FAC would permit the inference that Kurland controlled CSC after his departure **from Countrywide** in 2006.  Constitutional standing requires the plaintiff to show an injury that is "fairly traceable to the challenged action of the defendant." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citation and ellipses omitted).  Nothing in the FAC or in MassMutual's Opposition explains how Kurland's alleged control of CSC could have caused an injury with respect to securities sold after his departure or by other underwriters.

MassMutual objects that "factual questions regarding [Kurland's] involvement in various securitizations" preclude dismissal.  Opp. to Off. Defs' Mot. at 9 n.4.  MassMutual does not identify what such a "factual question" might

be, much less bridge the gap between a "factual question[] regarding [a defendant's] involvement" and a plausible inference of liability as required.[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Nor may a plaintiff file an overbroad claim in the hope that subsequent discovery will justify the charge. Accordingly, the Court **DISMISSES** the claims against Kurland except with respect to those Certificates underwritten by CSC while Kurland was employed **at Countrywide**. Dismissal is **WITHOUT PREJUDICE**.

## C. PERSONAL JURISDICTION

Defendants Mozilo, Sambol, Sieracki, Adler, Kripalani, and Sandefur have argued that the Court does not have personal jurisdiction over them. Kurland has not challenged the Court's jurisdiction.

Because the case was transferred from Massachusetts, the Court may exercise jurisdiction only to the same extent that the Massachusetts district could have done so. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2005 WL 2988715, at *2 (N.D. Cal. Nov. 7, 2005) ("In MDL actions such as this one, the court is entitled to exercise personal jurisdiction over each defendant only to the same degree that the original transferor court could have."). MassMutual bears the burden of making a *prima facie* showing that the Court has jurisdiction. *Harris Rutsky & Co. Ins. Servs. V. Bell & Clements Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003). The Court applies the general evidentiary standard applicable to a motion to dismiss, accepting the well-pleaded allegations in the FAC as true and resolving conflicts in favor of MassMutual. *Id.* MassMutual must establish both that a Massachusetts statute authorizes jurisdiction and that such jurisdiction

---

[8] It is of course possible to control a company for which one does not work or to, through one's control, set events in motion whose effects are felt after one's departure from a company. Liability is not *impossible* in such a scenario, but (as always) the plaintiff bears the burden of pleading facts that render liability *plausible*. MassMutual has failed to do so here.

1  comports with the due process guarantees of the Fourteenth Amendment. *Amba*
2  *Mktg. Sys. Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977).
3      MUSA contains a consent-to-service provision that authorizes jurisdiction,
4  and so the Court focuses its inquiry on Defendants' due process arguments.
5  Massachusetts General Laws, Chapter 110A, Section 414(h) ("Section 414(h)");
6  *Bulldog Investors Gen. P'ship v. Commonwealth*, 929 N.E.2d 293, 299 (Mass.
7  2010) (MUSA provides "authorization to subject nonresidents to enforcement
8  proceedings."). *Accord MassMutual*, 2012 WL 479106, at *11 n.14. (Section
9  414(h) "suppl[ies] the statutory authorization necessary for personal jurisdiction").
10     Personal jurisdiction may be general or specific. MassMutual argues that
11 specific jurisdiction is appropriate. Specific jurisdiction is analyzed under a three-
12 part test:
13     (1) The non-resident defendant must purposefully direct his activities or
14     consummate some transaction with the forum or resident thereof; or perform
15     some act by which he purposefully avails himself of the privilege of
16     conducting activities in the forum, thereby invoking the benefits and
17     protections of its laws; (2) the claim must be one which arises out of or
18     relates to the defendant's forum-related activities; and (3) the exercise of
19     jurisdiction must comport with fair play and substantial justice, i.e., it must
20     be reasonable.
21 *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).
22 The bulk of the parties' briefing addresses the first prong, purposeful
23 direction/availment.
24     Perhaps attempting to synchronize Section 414(h) and the constitutional
25 inquiry, MassMutual focuses on purposeful availment rather than purposeful
26 direction. Opp. to Off. Defs' Mot. at 14–22. However, in cases involving tortious
27
28

conduct, courts in the Ninth Circuit focus on purposeful direction rather than purposeful availment. *CollegeSource*, 653 F.3d 1066.[9]

The Court evaluates purposeful direction by "applying an 'effects' test that focuses on the forum in which the defendants' actions were felt." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc). The effects test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 1206. MassMutual may not bootstrap jurisdiction over any individual from jurisdiction over either their company or any other individual. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984).

MassMutual argues that the "expressly aimed" portion of this test is satisfied because the Individual Defendants controlled CSC and CSC sold the Certificates in Massachusetts. But MassMutual's argument ignores the anti-bootstrapping admonition in *Keeton* and conflates CSC's actions with its' officers' actions. If accepted, the argument would permit for nationwide jurisdiction over the control

---

[9] At the hearing, MassMutual argued that a recent Supreme Court case, *J. McIntyre Machinery, Ltd., v. Nicastro*, 131 S.Ct. 2780 (2011), supported the purposeful availment test as opposed to purposeful direction. The *Nicastro* plurality used the term "purposeful availment," but it also described its test as "contact with and activity directed at a sovereign." *Id.* at 2788. In companion cases decided shortly after *Nicastro*, the Ninth Circuit, whose authority is binding on this Court, considered *Nicastro* and reaffirmed that the "purposeful direction" test, in the form of the "effects" test described in the main text, applies to tort cases in the Ninth Circuit. *CollegeSource*, 653 F.3d at 1077; *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011). *See also Toyz, Inc. v. Wireless Toyz, Inc.*, No. C 09-05091 JF (HRL), 2010 WL 334475, at *6 (N.D. Cal. Jan. 25, 2010), (Explaining that "[t]he phrase 'purposeful availment' often is used to include both purposeful availment and purposeful direction, which are two distinct concepts.").

persons of any entity that conducts business nationwide or releases securities to the national market.[10]

On the contrary, Ninth Circuit law requires the Court to evaluate an officer defendant's connection with a forum separately from the allegations of control.[11] In *Ind. Plumbing Supply, Inc. v. Standard of Lynn, Inc.*, 880 F. Supp. 743 (C.D. Cal. 1995), the court found that a company's contacts with California justified jurisdiction (*id.* at 750), but found that those same allegations combined with a generalized allegation of control would not support jurisdiction over the company's president. *Id.* at 751. In *Brown v. General Steel Domestic Sales, LLC*, No. No. CV 08-00779 MMM (SHx), 2008 WL 2128057 (C.D. Cal. May 19, 2008), the plaintiff sought to assert jurisdiction over a corporate officer. The corporation had acted in California, and the plaintiff alleged that the officer, "formulates, controls, directs, supervises, perpetuates, manages and has knowledge of . . . the practices and policies of [the corporation]." *Id.* at *11. The court found "the mere

---

[10] Though the Court decides this issue under the "purposeful direction" test, the same criticism applies to MassMutual's purposeful availment argument. If control allegations and state Blue Sky law provisions could combine, without any additional showing, to demonstrate purposeful availment because an officer knew that securities would be subject to state Blue Sky laws, then every officer of every exchange-registered company would be subject to jurisdiction in each of the 50 states. The Court pressed this issue at oral argument and MassMutual was unable to articulate any limiting principle under the constitutional analysis.

[11] Of course the facts supporting each will sometimes overlap. In *j2 Global Commc'ns, Inc. v. Blue Jay, Inc.*, 2009 WL 29905, at *8 (N.D. Cal. Jan. 5, 2009) ("*j2 Global*"), relied upon heavily by Plaintiff and discussed further in the main text, the defendant directed his subordinates to specifically target certain products to California or to particular zip codes within California. This fact supports both an allegation of control (he supervised the actions) and an allegation of purposeful direction (he targeted certain zip codes). The *j2 Global* allegations progress forward from a specific fact, whereas MassMutual's allegations begin with CSC's actions and attempt to extrapolate them to the individuals based on the theory that if the individuals controlled generally, they must have controlled specific sales into Massachusetts.

fact that [the officer] is [the corporation's] president is not sufficient to subject him to jurisdiction in California." *Id.* In *Toyz, Inc. v. Wireless Toyz, Inc.*, No. C 09-05091 JF (HRL), 2010 WL 334475, at *8 (N.D. Cal. Jan. 25, 2010), the court held that the, "blanket allegation that the Individual Defendants controlled the [corporate defendant] at 'various relevant times' does not establish purposeful direction by any specific Individual Defendant."

MassMutual attempts to distinguish these cases by arguing that MUSA explicitly provides for control person liability, whereas the *Ind. Plumbing*, *Brown*, and *Toyz* cases required the plaintiffs to show that an officer's control rendered him a primary violator. This argument confuses statutory authorization of jurisdiction with the constitutional due process inquiry. On the contrary, the source of liability is irrelevant to whether the plaintiff has made a *prima facie* showing of personal jurisdiction. In *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996), AT&T brought a CERCLA claim against a Belgian holding company for environmental contamination caused by one of its subsidiaries in California. CERCLA "makes it clear that parent corporations . . . can be substantively liable for environmental contamination caused by their subsidiaries." *Id.* at 591 n.8. The Ninth Circuit nevertheless rejected AT&T's assertion of jurisdiction because "liability is not to be conflated with amenability to suit in a particular forum." *Id.* at 591. Instead, the Court must analyze each Defendants' contacts separately.

A case from the District of Columbia illustrates the point in the securities context. In *In re Baan Co. Secs. Litig.*, 245 F. Supp. 2d 117 (D.D.C. 2003), the plaintiff asserted control person liability under the Exchange Act and two foreign defendants contested personal jurisdiction. *Id.* at 120. The court had previously found the Section 20 allegations sufficient (*id.* at 128), but flatly rejected the plaintiff's proposal that an adequately pleaded Section 20 violation will suffice to show jurisdiction. *Id.* at 129. The court held:

> The Court agrees that the broad understanding of control person liability adopted by the Securities Act cannot on its own support personal jurisdiction. This approach impermissibly conflates statutory liability with the Constitution's command that the exercise of personal jurisdiction must be fundamentally fair. Congress' decision to make a broad group of persons liable under the securities laws cannot on its own discharge the responsibility of the federal courts to ensure that such persons have sufficient connection to the United States to render jurisdiction over them compatible with the Due Process Clause. The Fifth Amendment is made of sterner stuff.

*Id.* *Baan* was decided in the context of a federal securities claim, but its logic applies equally to a Section 410(b) claim under MUSA. Control allegations, standing alone, will not suffice to make a *prima facie* showing of personal jurisdiction.

Rather than generalized control allegations, the plaintiff must allege specific facts that support an inference that the foreign defendant directed his activities to the forum. In *Baan*, the Court ultimately exercised jurisdiction because the two foreign defendants had been knowing and willing participants in a scheme to inflate the stock price of a NASDAQ-listed company. *Id.* at 132–36. The *Baan* court found that such participation constituted sufficient "direction" towards the United States to satisfy due process concerns. *Id.* In *j2 Global*, cited extensively by MassMutual, a California court exercised jurisdiction over a Nevada resident because that resident was the sole officer of the corporate defendant, was allegedly the "guiding spirit" of the tortious scheme, and had been personally responsible for "hiring third-party advertisers to direct fax advertisements toward California for pecuniary gain." 2009 WL 29904, at *9. In *Openwave Systems Inc. v. Fuld*, No. C 08-5683 SI, 2009 WL 1622164, *12 (N.D. Cal.

Jun 06, 2009), the plaintiff alleged that the non-resident defendants, "intentionally directed their fraudulent scheme to California where Lehman conducted a substantial portion of its [auction rate securities] business."  The *Openwave* decision pushes the boundaries of personal jurisdiction, but the *Openwave* plaintiff at least provided an allegation that the out-of-state defendants had specifically directed their actions to California.

In each of the above cases, the plaintiff alleged some direct targeting of the forum and/or connection to the forum.  By contrast, nothing in the FAC indicates that Mozilo, Sambol, Sieracki, Adler, Kripalani, or Sandefur purposefully directed their own actions towards Massachusetts.  The most that could be inferred from the FAC is that these defendants knew that CSC sold Certificates to institutional investors nationwide and that Massachusetts investors (as well investors in the other 49 states) were therefore likely to end up with some Certificates.  This does not suffice to show express aiming, purposeful direction, or even purposeful availment.  Exercise of personal jurisdiction over Mozilo, Sambol, Sieracki, Adler, Kripalani, and Sandefur would be improper in Massachusetts.  Accordingly, the Court **DISMISSES** all of MassMutual's claims against Mozilo, Sambol, Sieracki, Adler, Kripalani, and Sandefur.  At oral argument Plaintiff conceded that it could not amend the FAC in order to make the required showing.  Dismissal is therefore **WITH PREJUDICE**.

### IV.   CONCLUSION

For the reasons set forth above, the Court **DISMISSES** the Section 410(a)(2) claims except as to the Underwriter Defendants.  The Court further **DISMISSES** the claims against Kurland except as to Certificates that CSC underwrote while Kurland was employed **at Countrywide**.  The Court further **DISMISSES** all claims against Mozilo, Sambol, Sieracki, Spector, Adler, Kripalani, and Sandefur.  Dismissal is **WITH PREJUDICE** except that

MassMutual may amend its claims against Kurland.  If MassMutual elects to amend, a second amended complaint is due within 21 days of this Order.

**IT IS SO ORDERED.**

DATED:  April  26, 2012

_____
Hon. Mariana R. Pfaelzer
United States District Judge