QUINN EMANUEL URQUHART & SULLIVAN, LLP
Harry A. Olivar, Jr. (Bar No. 143089)
harryolivar@quinnemanuel.com
Molly Stephens (Bar No. 232211)
mollystephens@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Philippe Z. Selendy (admitted *pro hac*)
philippeselendy@quinnemanuel.com
Jennifer J. Barrett (admitted *pro hac*)
jenniferbarrett@quinnemanuel.com
51 Madison Avenue
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Attorneys for Plaintiff Massachusetts
Mutual Life Insurance Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION | Case No. 11-ML-02265-MRP (MANx)<br><br>MASSMUTUAL'S OPPOSITION TO DEFENDANT STANFORD I. KURLAND'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT<br><br>Date: July 30, 2012<br>Time: 11:00 A.M.<br>Courtroom: 12<br>Judge: Hon. Mariana R. Pfaelzer |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*,<br><br>Defendants. | Case No. 11-CV-10414-MRP (MANx) |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

RELEVANT BACKGROUND ................................................................. 2

ARGUMENT ....................................................................................... 4

I.  MASSMUTUAL HAS STATED A PRIMARY LIABILITY CLAIM
    AGAINST COUNTRYWIDE SECURITIES ........................................ 5

II. MASSMUTUAL HAS ALLEGED THAT KURLAND CONTROLLED
    COUNTRYWIDE SECURITIES ...................................................... 5

CONCLUSION .................................................................................. 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Accuray, Inc. Sec. Litig.*,
   757 F. Supp. 2d 936 (C.D. Cal. 2010)..................................................................11

*Aristids Lambergs v. Total Health Sys., Inc.*,
   No. 88-0670, 1990 WL 98491 (D. Mass. July 3, 1990)........................................4

*Batwin v. Occam Networks, Inc.*,
   No. CV 07-2750, 2008 WL 2676364 (C.D. Cal. July 1, 2008) ...........................11

*In re Brooks Automation, Inc. Sec. Litig.*,
   No. 06-11068, 2007 WL 4754051 (D. Mass. Nov. 6, 2007)..................................4

*In re Charles Schwab Corp. Sec. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009).......................................................................8, 9

*In re Countrywide Fin. Corp. Sec. Litig.*,
   588 F. Supp. 2d 1132 (C.D. Cal. 2008)........................................................6, 8, 10

*In re Cylink Sec. Litig.*,
   178 F. Supp. 2d 1077 (N.D. Cal. 2001)................................................................6

*Dexia Holdings, Inc. v. Countrywide Fin. Corp.*,
   No. 2:10-CV-07165, 2012 WL 1798997 (C.D. Cal. Feb. 17, 2012)......................8

*In re Downey Sec. Litig.*,
   No. CV 08-3261, 2009 WL 736802 (C.D. Cal. Mar. 18, 2009) ...........................11

*In re Gupta Corp. Sec. Litig.*,
   900 F. Supp. 1217 (N.D. Cal. 1994)....................................................................11

*Harriman v. E. I. DuPont De Nemours & Co.*,
   372 F. Supp. 101 (D. Del. 1974) ..........................................................................6

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) ..............................................................................6

*In re Impac Mortgage Holdings, Inc. Sec. Litig.*,
   554 F. Supp. 2d 1083 (C.D. Cal. 2008)..............................................................10

*In re Int'l Rectifier Corp. Sec. Litig.*,
   No. CV 07-02544, 2008 WL 4555794 (C.D. Cal. May 23, 2008).........................6

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
   No. 2:10-CV-0302, 2011 WL 4389689 (C.D. Cal. May 5, 2011) ......................6, 7

*In re MannKind Sec. Actions*,
   No. CV 11-00929, 2011 WL 6327089 (C.D. Cal. Dec. 16, 2011).........................6

*Mass. Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
   -- F. Supp. 2d -- 2012 WL 479106 (D. Mass. Feb. 14, 2012)........................4, 10

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
 320 F.3d 920 (9th Cir. 2003) ................................................................... 7

*Pantoja v. Countrywide Home Loans, Inc.*,
 640 F. Supp. 2d 1177 (N.D. Cal. 2009) ................................................... 9

*In re Portal Software, Inc. Sec. Litig.*,
 No. C-03-5138, 2006 WL 2385250 (N.D. Cal. Aug. 17, 2006) ............. 6

*S.E.C. v. Todd*,
 642 F.3d 1207 (9th Cir. 2011) .............................................................. 11

*In re Tronox, Inc. Sec. Litig.*,
 769 F. Supp. 2d 202 (S.D.N.Y. 2011) ................................................. 7, 9

*Wells v. Monarch Capital Corp.*,
 No. 91-10575, 1991 WL 354938 (D. Mass. Aug. 23, 1991) ................. 9

## **Statutes**

Mass. Gen. Laws ch. 110A, § 410(b) .......................................... 2, 4, 5-6, 9

1  Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual")

2  respectfully submits this Opposition to the Motion to Dismiss filed by Defendant

3  Stanford Kurland ("Kurland").

4  PRELIMINARY STATEMENT

5  The control person language of the Massachusetts Uniform Securities Act is

6  straightforward:  It imposes control person liability not only on partners, officers, or

7  directors of a primary violator, but also on any person who either directly *or*

8  *indirectly* controls a primary violator.  MassMutual has adequately alleged that

9  Countrywide Securities Corporation ("Countrywide Securities") was a primary

10  violator that sold residential mortgage-backed securities to MassMutual by means of

11  false and misleading offering materials.  MassMutual also has adequately alleged that

12  Kurland controlled Countrywide Securities, both directly and indirectly, as the

13  President and Chief Operating Officer of Countrywide Financial Corporation

14  ("Countrywide Financial," and with its subsidiaries, "Countrywide"), the parent

15  company of Countrywide Securities that operated its subsidiaries as a collective

16  enterprise.  Among other things, Countrywide Financial used Countrywide Securities

17  and its other subsidiaries to obtain an unprecedented 30-percent share of the

18  residential loan market by originating and securitizing low-quality mortgage loans.

19  Kurland ignores the plain language of the Massachusetts Uniform Securities

20  Act, arguing that MassMutual's control person claim must fail because "MassMutual

21  does not allege that Kurland had *any* direct relationship with" Countrywide

22  Securities.  Motion at 2 (emphasis in original).  Kurland's argument must be rejected

23  not only because it is based on a too-narrow reading of MassMutual's allegations, but

24  also because it seeks to read out of the statute any liability based on an indirect

25  control relationship with a primary violator.  MassMutual has adequately alleged

26  facts showing that Kurland had the power to control—and did control—Countrywide

27  Securities through his executive positions with Countrywide Financial.  Because

28  control is an intensely factual question that is rarely appropriate for resolution on a

motion to dismiss, Kurland's motion, which misreads both MassMutual's control allegations and the statutory control standard, should be denied.

RELEVANT BACKGROUND

MassMutual has asserted a single claim against Kurland, for control person liability under Section 410(b) of the Massachusetts Uniform Securities Act (the "Massachusetts Securities Act").  Section 410(b) imposes joint and several liability on "[e]very person who directly or indirectly controls a seller liable under [Section 410(a)]" and "every partner, officer, or director of such a seller," among others. Mass. Gen. Laws ch. 110A, § 410(b).  In its April 26, 2012 Amended Order, the Court limited "sellers" under Section 410(a) of the Massachusetts Securities Act to the underwriters, and limited the control person claim against Kurland to "Certificates underwritten by [Countrywide Securities] while Kurland was employed at Countrywide."  Amended Order at 12.

Kurland was employed at Countrywide from 1979 to September 7, 2006.  FAC ¶ 39.  During that time, Countrywide Securities underwrote 13 securitizations, in which MassMutual purchased over $300 million of Certificates.  *Id.* ¶¶ 16, 72.[1] Countrywide Securities sold the Certificates to MassMutual using false and misleading registration statements, prospectuses, prospectus supplements, term sheets, and related materials (the "Offering Materials").  *Id.* ¶¶ 73-385.  Having sold

---

[1]  Kurland misreads the Court's Amended Order seeking to limit the claim against him so that it involves fewer than 13 securitizations.  Kurland argues that the Court limited the control person claim against him to Certificates that were "issued" before his departure from Countrywide.  Motion at 1.  This was not the Court's ruling; Kurland's version would artificially exclude securitizations that Countrywide Securities had done work to underwrite prior to Kurland's departure simply because the Certificates had not yet been issued.  In fact, Kurland's version would exclude certain securitizations for which Countrywide Securities had prepared and distributed some or all of the misleading offering materials while he was still employed with Countrywide (*e.g.*, the Alternative Loan Trust 2006-OA9 and OA11 securitizations and the CWABS 2006-16 and 17 securitizations).  *See* Motion at 8 n.5.  This is not what the Court ruled.

1  MassMutual the Certificates by means of false and misleading Offering Materials,

2  Countrywide Securities is liable as a primary violator under Massachusetts Securities

3  Act Section 410(a)(2).  *See* Corp. Opp. at 5-24.

4        Countrywide Securities was controlled by Countrywide Financial, which

5  operated Countrywide Securities and other subsidiaries "as a collective enterprise to

6  originate and securitize mortgage loans in an attempt to grow Countrywide

7  Financial's market share and increase its stock price."  FAC ¶¶ 54, 404, 557.

8  Countrywide Financial maintained a "high level of day-to-day scrutiny and control"

9  over Countrywide Securities, including "approving the manner in which the

10  mortgage-backed securities were marketed and sold, and controlling the disclosures

11  made in connection with the securitizations."  *Id.* ¶ 404.  Countrywide Financial also

12  "determined and controlled the strategy" implemented by Countrywide Securities,

13  including its attempts "to transfer the risk of default on low quality loans to investors

14  through securitizations."  *Id.* ¶ 557.  Indeed, Countrywide Financial, through its

15  former head Angelo Mozilo, issued the edict "'to get our market share to the ultimate

16  30% by 2006, 2007.'"  *Id.* ¶ 141.  Under that edict, Countrywide Securities altered its

17  business to securitize the large volume of low-quality loans that Countrywide was

18  now originating.  *Id.* ¶¶ 142-144, 151.

19        The managing officers and directors of Countrywide Financial were the ones

20  who determined and implemented Countrywide Financial's policies and who

21  exercised Countrywide Financial's control over its subsidiaries, including

22  Countrywide Securities.  *See* FAC ¶¶ 39, 142-143, 146-149, 152-156, 158.  From

23  1988 until September 7, 2006, Kurland was one of the top officers of Countrywide

24  Financial directing its subsidiaries; he served as Countrywide Financial's Chief

25  Operating Officer (from 1988 to 2004) and its President (from January 2004 to

26  September 2006), and was a member of its Board of Directors (from 1999 to

27  September 2006).  *Id.* ¶¶ 39, 425.  Kurland was closely involved with the daily

28  management of Countrywide Financial's core operations and was a critical

CASE NO. 11-CV-10414-MRP (MANx)
MASSMUTUAL'S OPPOSITION TO KURLAND'S MOTION TO DISMISS

1   participant in developing and implementing Countrywide Financial's strategy of

2   using its subsidiaries to originate and securitize high-risk loans. *Id*. ¶¶ 426-427.

3   Through his committee membership and day-to-day role as a top officer controlling

4   Countrywide Financial, Kurland "dictat[ed] Countrywide Financial priorities to

5   Countrywide subsidiaries, including Countrywide Securities." *Id.* ¶ 428. Kurland

6   was a member of Countrywide Financials' Executive Strategy, Asset/Liability,

7   Corporate Credit Risk, and Responsible Conduct Committees. *Id*. ¶ 429. The

8   Executive Strategy Committee was particularly instrumental in controlling

9   Countrywide Financial's subsidiaries, including Countrywide Securities, through its

10  review and approval of the operational plans and budgets for all Countrywide

11  divisions. *Id*. Kurland exercised further control over Countrywide Securities'

12  activities in connection with the offerings at issue by serving as an officer for four of

13  the depositors and signing registration statements for all 13 securitizations

14  underwritten by Countrywide Securities during his tenure. *Id*. ¶¶ 430-431.

15                                    ARGUMENT

16         MassMutual has adequately alleged that Kurland is liable under Section 410(b)

17  of the Massachusetts Securities Act, which imposes liability on "[e]very person who

18  directly or indirectly controls a seller liable under subsection (a), every partner,

19  officer, or director of such a seller, [and] every person occupying a similar status or

20  performing similar functions." Mass. Gen. Laws ch. 110A, § 410(b). Under the

21  applicable Rule 8(a) pleading standard, all that is required to state a claim for control

22  person liability against Kurland is an alleged primary violation of subsection 410(a)

23  by Countrywide Securities and allegations that Kurland directly or indirectly

24  controlled Countrywide Securities. *See Mass. Mut. Life Ins. Co. v. Residential*

25  *Funding Co., LLC*, -- F. Supp. 2d --, 2012 WL 479106, at *10 (D. Mass. Feb. 14,

26  2012); *see also In re Brooks Automation, Inc. Sec. Litig.*, No. 06-11068, 2007 WL

27  4754051, at *13 (D. Mass. Nov. 6, 2007); *Aristids Lambergs v. Total Health Sys.,*

28  *Inc.*, No. 88-0670, 1990 WL 98491, at *2 (D. Mass. July 3, 1990). MassMutual has

1    adequately alleged both elements.

2    I.    MASSMUTUAL HAS STATED A PRIMARY LIABILITY CLAIM
3          AGAINST COUNTRYWIDE SECURITIES

4          Kurland incorporates the Countrywide Defendants' Memorandum, arguing that
5    the control person claim against him must be dismissed because MassMutual has
6    failed to allege an underlying violation of Section 410(a)(2) by Countrywide
7    Securities.  Motion at 4.  As described in detail in its Opposition to the Countrywide
8    Defendants' Motion, however, MassMutual has stated a Section 410(a)(2) claim
9    against Countrywide Securities.  *See* Corp. Opp. at 5-24.  MassMutual has
10   sufficiently alleged that Countrywide Securities sold it securities by means of
11   materially false and misleading Offering Materials.  *See id.*  MassMutual has satisfied
12   the first prong of the control-person analysis, and Kurland's motion to dismiss
13   MassMutual's control person claim against him on this basis should be denied.

14   II.   MASSMUTUAL HAS ALLEGED THAT KURLAND CONTROLLED
15         COUNTRYWIDE SECURITIES

16         Kurland also incorrectly argues that MassMutual's Section 410(b) claim
17   against him fails because MassMutual does not allege that Kurland "had any direct
18   relationship with [Countrywide Securities]" and that his liability instead is premised
19   solely upon Countrywide Securities' status as a Countrywide subsidiary.  Motion at 2,
20   7 (emphasis omitted).  This argument relies upon an improper reading of the
21   Massachusetts Securities Act, which imposes liability based on both direct and
22   indirect control relationships, and an improperly narrow reading of MassMutual's
23   allegations.  The First Amended Complaint alleges that Kurland indirectly controlled
24   Countrywide Securities through his control over Countrywide Financial, and directly
25   controlled Countrywide Securities and its business, including through his
26   involvement on key committees and in the securitizations at issue.  *See* FAC ¶¶ 425-
27   431, 565.

28         Section 410(b) explicitly imposes liability on "[e]very person who *directly or*

-5-

1  *indirectly* controls" a primary violator.  Mass. Gen. Laws ch. 110A, § 410(b)

2  (emphasis added).  Contrary to Kurland's assertion, Motion at 4, "it is *not* necessary

3  to show *actual participation* or the *exercise* of actual power" over the primary

4  violator to allege control.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir.

5  2000) (emphasis added); *accord In re MannKind Sec. Actions*, No. CV 11-00929,

6  2011 WL 6327089, at *20 (C.D. Cal. Dec. 16, 2011) (same).  Rather, the defendant

7  need only have the power to control or influence the primary violator.  *See Howard*,

8  228 F.3d at 1065; *see also In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1089 (N.D.

9  Cal. 2001) (confirming that "plaintiffs need not allege that the individual defendants

10  actually participated in the wrongful conduct or exercised actual power to be

11  derivatively liable" and finding sufficient plaintiffs' allegations that the individual

12  defendants' executive and managerial positions gave them the power to control and

13  influence the company).

14      The determination of who is a controlling person is "an intensely factual

15  question," *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1201

16  (C.D. Cal. 2008) (internal quotations omitted), that is rarely appropriate for motion

17  practice.  *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138, 2006 WL

18  2385250, at *5 (N.D. Cal. Aug. 17, 2006) (whether a defendant is a controlling

19  person "is a highly factual question that should not be decided on [a] motion to

20  dismiss"); *accord In re Cylink Sec. Litig.*, 178 F. Supp. 2d at 1089.  At the motion to

21  dismiss stage, "'allegations concerning an individual defendant's title and

22  responsibilities are usually sufficient to establish control.'"  *Maine State Ret. Sys. v.*

23  *Countrywide Fin. Corp.,* No. 2:10-CV-0302, 2011 WL 4389689, at *12 (C.D. Cal.

24  May 5, 2011) (quoting *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544, 2008

25  WL 4555794, at *22 (C.D. Cal. May 23, 2008)).  Control also may be established by

26  a myriad of other factors specific to each case, such as business relationships between

27  entities or overlapping directors and officers.  *See, e.g.*, *Harriman v. E. I. DuPont De*

28  *Nemours & Co.*, 372 F. Supp. 101, 105 (D. Del. 1974) ("[Control] is to be construed

liberally[,] requiring only some indirect means of discipline or influence short of actual direction. . . . [I]ndirect means of discipline or influence . . . may arise from . . . business relationships, interlocking directors, family relationship and a myriad of other factors." (internal quotations and citations omitted)); *see also No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945-46 (9th Cir. 2003) (finding "indicia of control" from shareholder relationship, significant voting power, power to elect members of the board and committees, and overlapping officers and directors).

The First Amended Complaint alleges that Kurland had the power to (and did) indirectly control Countrywide Securities through his control over Countrywide Financial, which is sufficient to state a claim under Section 410(b). *See, e.g.*, *Maine State Ret. Sys.*, 2011 WL 4389689, at *14 (upholding control person claim against David Sambol, President and COO of Countrywide Financial, predicated upon allegations that Countrywide Financial controlled the "Issuer Defendants" and that Sambol directed and controlled the Issuer Defendants' process of issuing certificates and registration statements through Countrywide Financial); *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202 (S.D.N.Y. 2011) (upholding control person claims against officers alleged to control entity that in turn controlled the primary violator).

Kurland does not seriously dispute his control over Countrywide Financial, merely noting his disagreement with this Court's prior holding that allegations of a defendant's position as a director or high-level officer are sufficient to allege control. *See* Motion at 6 n.4. Although this is sufficient under the Court's prior holding, MassMutual has alleged significant additional facts to show Kurland's control over Countrywide Financial. For example, MassMutual has alleged that Kurland was one of the three most influential executives at Countrywide Financial, was described as "'[Countrywide's] chief architect in developing innovative programs and systems to improve productivity,'" managed Countrywide Financial's core operations on a daily basis, and was a "critical participant" in implementing Countrywide's business plan

1   to originate a large volume of low-quality loans for securitization and sale.  FAC

2   ¶¶ 426-427.  These allegations are more than sufficient to allege control.  *See In re*

3   *Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1201 (finding that officer

4   defendants of Countrywide Financial, including Kurland, were plausible control

5   persons of that entity based on their positions and responsibilities at Countrywide

6   Financial); *see also Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, No. 2:10-CV-

7   07165, 2012 WL 1798997, at *4 (C.D. Cal. Feb. 17, 2012) (finding allegations of

8   defendants'—including Kurland's—name, title, and listing of which registration

9   statements they signed were sufficient to support a control person claim because "[i]t

10  is a plausible inference that a director or high-level officer of an entity exercised

11  control over that entity").

12         Similarly, Kurland does not dispute Countrywide Financial's control over

13  Countrywide Securities.  *See* Motion at 5-8.  As MassMutual has alleged,

14  Countrywide Financial operated its subsidiaries as a collective enterprise.  FAC

15  ¶¶ 54, 404, 557.  Countrywide Financial directed its subsidiaries, including

16  Countrywide Securities, to originate and securitize low-quality mortgage loans so the

17  enterprise could achieve its goal of obtaining a 30-percent share of the residential

18  mortgage market.  *See, e.g.*, *id.* ¶¶ 141-148.  Countrywide Financial maintained "a

19  high level of day-to-day scrutiny and control" over Countrywide Securities and the

20  securitizations, including through overlapping management.  *Id.* ¶ 404.  Countrywide

21  Financial approved the manner in which Countrywide Securities marketed and sold

22  the mortgage-backed securitizations, and controlled the disclosures made in

23  connection with the securitizations.  *Id.*  MassMutual has adequately alleged that

24  Countrywide Financial controlled Countrywide Securities.  *See In re Charles Schwab*

25  *Corp. Sec. Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009) (upholding control person

26  claims against corporate defendants on allegations that such defendants were the

27  "parent company of the Charles Schwab financial services complex, the parent

28  company of [the asset management company] and the principal underwriter and

-8-

1  distributor for [the] shares, the entity that over[saw] the asset management and

2  administration of the [fund]" (internal quotations omitted and alterations in original)).

3        MassMutual's allegations that Kurland controlled Countrywide Financial, the

4  entity that controlled Countrywide Securities, are sufficient to allege that Kurland

5  indirectly controlled Countrywide Securities. *See In re Tronox, Inc. Sec. Litig.*, 769

6  F. Supp. 2d at 219-20; *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. at 550

7  (inferring that officers of the parent company of a fund who also signed the

8  registration statement were in a position to exercise power and control over the fund

9  that issued the relevant shares and denying motion to dismiss control person claims);

10 *Wells v. Monarch Capital Corp.*, No. 91-10575, 1991 WL 354938, at *11-12 (D.

11 Mass. Aug. 23, 1991) (finding officers of parent company controlled actions of

12 wholly-owned subsidiary, where allegedly false financial information was included in

13 annual reports prepared under direction of and signed by officers).[2]  Indirect control

14 is sufficient to state a claim, Mass. Gen. Laws ch. 110A, § 410(b), and Kurland's

15 motion to dismiss should be denied.

16        Kurland's motion to dismiss also should be denied because MassMutual has

17 alleged that Kurland had the power to control (and did control) Countrywide

18 Securities directly, through his influential roles in the Countrywide enterprise and his

19 participation on committees that determined the business and budget of Countrywide

20 Securities. *See* FAC ¶¶ 425, 429.  Kurland "exerted significant control over[] the

21 process by which Countrywide Securities packaged and sold [the] flawed mortgage

22    [2]  Citing *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177 (N.D.
23 Cal. 2009), Kurland asserts that MassMutual is improperly attempting "to conflate
   Countrywide Financial and its subsidiaries."  Motion at 7.  Kurland is wrong.
24 MassMutual recognizes the separate corporate existence of Countrywide Financial
25 and Countrywide Securities, and has alleged facts that Kurland indirectly controlled
   Countrywide Securities through his control over Countrywide Financial, as permitted
26 by Section 410(b).  In addition, *Pantoja* is inapposite; it did not address a control
27 theory, but rather an alter ego or agency theory not at issue here.  *See Pantoja*, 640 F.
   Supp. 2d at 1192.
28

1  loans," and "was a critical decision maker and spokesperson in dictating Countrywide

2  Financial priorities to Countrywide subsidiaries, including Countrywide Securities."

3  *Id.* ¶ 428.

4         Kurland argues that MassMutual's allegations are "conclusory" and "devoid of

5  factual basis," especially because MassMutual "does not even allege that Kurland

6  held any position at [Countrywide Securities]."  Motion at 7.  But MassMutual need

7  not allege that Kurland held a position at Countrywide Securities to allege Kurland's

8  power to control it.  MassMutual has alleged that the Countrywide enterprise was

9  operated as an integrated business, with its high-level executive officers participating

10 in all levels of the organization and sitting on committees that determined the

11 business plan and budget of the Countrywide subsidiaries.  *See, e.g.*, FAC ¶¶ 54, 404,

12 429.  While he was at Countrywide, Kurland was one of the most influential

13 Countrywide executive officers and participated in the daily management of

14 Countrywide's core businesses, including loan origination (formally the business of

15 Countrywide Home Loans, Inc.) and loan securitization (formally the business of

16 Countrywide Securities).  *Id.* ¶¶ 426-428, 430-431.

17        MassMutual's allegations of Kurland's direct control over Countrywide

18 Securities, like the allegations of indirect control, are sufficient at the pleading stage,

19 especially because control is an intensely factual question and there is no heightened

20 pleading standard for control person claims under Section 410(b).  *See Mass. Mut.*

21 *Life Ins. Co.*, 2012 WL 479106, at *3 (pleading standard for control under Section

22 410(b) is Rule 8(a)); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at

23 1201 (control is "an intensely factual question" (internal quotations omitted)).

24 Kurland's cases, many of which address claims under Sections 10(b) and 20(a) of the

25 1934 Act and apply a heightened pleading standard under Rule 9(b) and the PSLRA,

26 neither of which apply here, do not establish otherwise.  *See* Motion at 7 (citing *In re*

27 *Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1101 n.12 (C.D.

28 Cal. 2008) (requiring plaintiff to allege Section 20(a) control-person claims "with

1    particularity"); *In re Downey Sec. Litig.*, No. CV 08-3261, 2009 WL 736802, at *15

2    (C.D. Cal. Mar. 18, 2009) (dismissing a Section 20(a) control person claim for failure

3    "to make any particularized allegations")).

4          Finally, Kurland incorrectly asserts that MassMutual is required to establish

5    that Kurland exercised "'a significant degree of day-to-day operational control,

6    amounting to the power to dictate [Countrywide Securities'] conduct or operations.'"

7    Motion at 8.  MassMutual has met this standard by alleging Kurland's daily

8    management of the core operations of Countrywide and his power to dictate

9    Countrywide Securities' business and the disclosures for the securitizations at issue.

10   *See* FAC ¶¶ 425-431, 565.  In any event, this is not the correct standard for control;

11   the Ninth Circuit has held that day-to-day operational control over the primary

12   violator is not required to establish control person liability, but rather it is merely one

13   indicia of control.  *See S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011)

14   ("[I]ndicia of 'control' *include* whether the person managed the company on a day-to-

15   day basis and was involved in the formulation of financial statements." (emphasis

16   added)); *see also In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1242 (N.D. Cal.

17   1994) ("Plaintiffs need not show day-to-day control of the defendant company in

18   order to establish control person liability.").  The cases cited by Kurland are not to the

19   contrary.  *See Batwin v. Occam Networks, Inc.*, No. CV 07-2750, 2008 WL 2676364,

20   at *25 (C.D. Cal. July 1, 2008) (indicia of control include owning stock in the target

21   company or having a seat on the board—not just day-to-day operational control); *In*

22   *re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 952 (C.D. Cal. 2010) (the plaintiff

23   in that case, unlike MassMutual, failed to allege control over the false and misleading

24   statements).  MassMutual's detailed allegations of direct control (and its allegations

25   of indirect control) are sufficient to allege a control person claim against Kurland

26   under Section 410(b) of the Massachusetts Securities Act.

27

28

<u>CONCLUSION</u>

For the foregoing reasons, Kurland's Motion to Dismiss MassMutual's claims should be denied.

DATED:  June 25, 2012           QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                           By  /s/  Harry A. Olivar, Jr.
                                              Harry A. Olivar, Jr.
                                              Molly Stephens
                                              865 South Figueroa Street, 10th Floor
                                              Los Angeles, California  90017

                                              Philippe Z. Selendy (admitted *pro hac*)
                                              Jennifer J. Barrett (admitted *pro hac*)
                                              51 Madison Avenue
                                              New York, New York 10010

                                              *Attorneys for Massachusetts Mutual Life Insurance Company*