CALDWELL LESLIE & PROCTOR, PC
CHRISTOPHER G. CALDWELL, State Bar No. 106790
 *caldwell@caldwell-leslie.com*
JEANNE A. FUGATE, State Bar No. 236341
 *fugate@caldwell-leslie.com*
KELLY L. PERIGOE, State Bar No. 268872
 *perigoe@caldwell-leslie.com*
1000 Wilshire Boulevard, Suite 600
Los Angeles, California  90017-2463
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

Attorneys for Defendant
STANFORD L. KURLAND

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| In re COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION CASES | Case No. 11-ML-2265-MRP (MANx) |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, <br><br>Plaintiff, <br><br>v. <br><br>COUNTRYWIDE FINANCIAL CORPORATION, et al., <br><br>Defendants. | Case No. CV 11-10414-MRP (MANx) <br><br>**REPLY IN SUPPORT OF DEFENDANT STANFORD L. KURLAND'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br>Honorable Mariana R. Pfaelzer <br><br>Date:      July 30, 2012 <br>Time:      11:00 a.m. <br>Courtroom: 12 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. THE CONTROL PERSON CLAIM AGAINST KURLAND SHOULD BE DISMISSED BECAUSE THE PREDICATE SECTION 410(a)(2) CLAIM AGAINST CSC FAILS ................................................................... 1

III. THE CONTROL PERSON CLAIM AGAINST KURLAND SHOULD BE DISMISSED FOR FAILURE TO SUFFICIENTLY ALLEGE THAT KURLAND WAS A CONTROL PERSON OF CSC ........................... 2

    A. The Control Person Allegations Against Kurland are All Based on His Positions at and Alleged Control of Countrywide Financial ..................................................................................... 2

    B. Allegations of Indirect Control of CSC through Countrywide Financial are Insufficient Because Control Person Liability Cannot Be Based Solely on a Tertiary Relationship to the Primary Violator ................................................................................ 4

IV. CONCLUSION .............................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cohen v. State St. Bank & Trust Co.*,
    893 N.E.2d 425 (2008) ................................................................................ 1

*Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, No. 2:11-CV-07165 MRP,
    2012 WL 1798997 (C.D. Cal. Feb. 17, 2012) .............................................. 7

*Fezzani v. Bear, Stearns & Co., Inc.*,
    384 F.Supp.2d 618 (S.D.N.Y. 2004) ......................................................... 4-5

*Howard v. Everex Sys., Inc.*,
    228 F.3d 1057 (9th Cir. 2000) .................................................................... 4

*In re Charles Schwab Corp. Sec. Litig.*,
    257 F.R.D. 534 (S.D.N.Y. 2009) ................................................................ 6

*In re Countrywide Fin. Corp. Sec. Litig.*,
    588 F.Supp.2d 1132 (C.D. Cal. 2008) ........................................................ 7

*In re Countrywide Fin. Corp. Sec. Litig.*, No. 07-CV-05295-MRP (MANx),
    2009 WL 943271 (C.D. Cal. Apr. 6, 2009) ................................................. 2

*In re Tronox, Inc. Sec. Litig.*,
    769 F.Supp.2d 202 (S.D.N.Y 2011) ........................................................... 5

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-CV-0302 MRP,
    2011 WL 4389689 (C.D. Cal. May 5, 2011) ........................................... 7-8

*Massachusetts Mut. Life Ins. Co. v. Residential Funding Co., LLC*,
    No. CA 11-30035, 2012 WL 479106 (D. Mass. Feb. 14, 2012) ................. 1

*Scott v. NG U.S. 1, Inc.*,
    450 Mass. 760 (2008) ............................................................................ 3-4, 8

*SEC v. Todd*,
    642 F.3d 11207 (9th Cir. 2011) .................................................................. 4

*Wells v. Monarch Capital Corp.*, No. 91-10575-MA,
    1991 WL 354938 (D.Mass. Aug. 23, 1991) ....................................................... 6

**Statutes**

Mass. Gen. Laws, ch. 110A, § 410(a) ................................................................... 1-2

Mass. Gen. Laws, ch. 110A, § 410(b) ................................................................. 1, 2-3

## I. INTRODUCTION

The sole claim asserted against Defendant Stanford L. Kurland ("Kurland") survived the first round of motion to dismiss briefing in a limited form—as a claim for "violation of Section 410(b) based on his alleged indirect control of CSC." (April 26, 2012 Order at 11.) Now that the Court has (1) dismissed on privity grounds all but one Countrywide entity as an alleged primary violator under Count I, and (2) dismissed on jurisdictional grounds all but one individual defendant as an alleged control person under Count II, Plaintiff Massachusetts Mutual Life Insurance Company ("MassMutual") must attempt to link these two defendants in order to maintain its control person claim.

As demonstrated in Kurland's opening memorandum in support of his Motion to Dismiss, the link is too tenuous. Count II for control person liability against Kurland must be dismissed because MassMutual has not adequately alleged that Kurland controlled Countrywide Securities Corporation ("CSC"). Count II must also be dismissed with prejudice because, for all of the reasons in the Countrywide Defendants' opening and reply memoranda, MassMutual has failed to adequately allege a primary violation of MUSA Section 410(a) by CSC.

## II. THE CONTROL PERSON CLAIM AGAINST KURLAND SHOULD BE DISMISSED BECAUSE THE PREDICATE SECTION 410(a)(2) CLAIM AGAINST CSC FAILS

MassMutual does not dispute that to plead a control person claim against Kurland under MUSA Section 410(b), MassMutual must first adequately plead that CSC committed a primary violation of MUSA Section 410(a). (Opp. at 4.) *See also Cohen v. State St. Bank & Trust Co.*, 893 N.E.2d 425, 431 n.13 (2008); *Massachusetts Mut. Life Ins. Co. v. Residential Funding Co., LLC*, No. CA 11-30035 *et al.*, 2012 WL 479106, at *10 (D. Mass. Feb. 14, 2012). For all of the reasons in the Countrywide Defendants' memorandum and reply brief, MassMutual fails to state a

claim against CSC for violation of MUSA Section 410(a). Accordingly, the MUSA Section 410(b) claim against Kurland must also be dismissed with prejudice.[1]

### III. THE CONTROL PERSON CLAIM AGAINST KURLAND SHOULD BE DISMISSED FOR FAILURE TO SUFFICIENTLY ALLEGE THAT KURLAND WAS A CONTROL PERSON OF CSC

#### A. *The Control Person Allegations Against Kurland are All Based on His Positions at and Alleged Control of Countrywide Financial*

MassMutual essentially argues that the FAC should be read to allege that Kurland controlled CSC because Kurland is alleged to have controlled Countrywide Financial, and Countrywide Financial is in turn alleged to have controlled CSC. Such allegations are properly characterized as allegations of "indirect" control, at best. (*See* April 26, 2012 Order at 11 (referring to "alleged indirect control of CSC").) Whether characterized as allegations of "direct" or "indirect" control, however, all of MassMutual's control person allegations against Kurland stem from his positions at Countrywide Financial Corporation ("Countrywide Financial")—not CSC.[2] For example, although MassMutual argues that the FAC alleges that Kurland

---

[1] The Court has already limited the Certificates at issue in Count II against Kurland based on both the identity of the underwriter and the date of Kurland's termination from Countrywide Financial. Just as in *In re Countrywide Financial Corporation Securities Litigation*, in which this Court held that an individual defendant cannot "as a matter of law" be held liable for notes "issued" after his departure from the company, the Court limited the Certificates at issue in the instant claim against Kurland based on the date of his departure from Countrywide Financial. *See In re Countrywide Fin. Corp. Sec. Litig.*, CV07-05295-MRP (MANx), 2009 WL 943271 (C.D. Cal. Apr. 6, 2009) ("McLaughlin also now argues that, because he resigned from Countrywide effective April 5, 2005, he cannot, as a matter of law, be liable as a control person under § 15 for Countrywide's potential liability on Notes issued after his resignation. McLaughlin is correct."). MassMutual urges that the Order was not intended to exclude Certificates that had not yet been issued but that CSC "had done work to underwrite prior to Kurland's departure." (Opp. 2 n.1.) The Court's Order, however, is not so limited. (*See, e.g.*, Order at 11 ("Nothing in the FAC or in MassMutual's Opposition explains how Kurland's alleged control of CSC could have caused an injury with respect to securities *sold after his departure*. . . .") (emphasis added).)

[2] The "directly or indirectly" language of § 410(b), on which MassMutual focuses in its opposition, also appears in Section 20(a) of the Securities Exchange Act of 1934 (footnote continued)

"directly controlled" CSC "through his involvement on key committees and in the securitizations at issue" (Opp. at 5, 9-10), MassMutual does not explain how this argument is distinct from the argument that Kurland *indirectly* controlled CSC through his control of Countrywide Financial: The committee involvement and involvement in the securitization process MassMutual alleges allegedly occurred in Kurland's capacity as an officer and director of CFC or of the Issuer Defendants.[3] (*See, e.g.*, FAC ¶ 429 (alleging Kurland's involvement with management committees at CFC); Opp. at 10 ("While he was at Countrywide, Kurland was one of the most influential Countrywide executive officers and participated in the daily management of Countrywide's core businesses, including . . . loan securitization (formally the business of [CSC].").)

In an attempt to blur the distinction between Countrywide Financial and its operational subsidiary CSC, MassMutual alleges that Countrywide Financial "operated [its] subsidiaries as a collective enterprise to originate and securitize mortgage loans in an attempt to grow Countrywide Financial's market share and increase its stock price" and that "Countrywide Financial maintained a high level of day-to-day scrutiny and control over the Countrywide Defendants, controlling the guidelines for loan origination, determining which loan products to offer, establishing the procedures and infrastructure for granting exceptions to underwriting guidelines, approving the manner in which the mortgage-backed securities were marketed and sold, and controlling the disclosures made in connection with the securitizations." (FAC ¶ 404.) This attempt runs afoul of one of the "bedrock principles" or "basic tenets" of corporate common law: "that

---

and thus should not be construed as any effort by the Massachusetts legislature to expand the scope of control person liability in MUSA beyond that of its federal counterpart.

[3] Referred to variously in this Multi-District Litigation as "Issuer Defendants" and "Depositor Defendants," these entities are CWALT, Inc., CWMBS, Inc., CWABS, Inc., and CWHEQ, Inc.

corporations—notwithstanding relationships between or among them—ordinarily are regarded as separate and distinct entities." *Scott v. NG U.S. 1, Inc.*, 450 Mass. 760, 766 (2008). Indeed, this Court implicitly recognized that clear distinctions must be drawn between Countrywide Financial and its operational subsidiary CSC when it amended its order in this case on April 26, 2012 to clarify which entity had employed Kurland.

In any event, the allegation that Countrywide Financial operated as a "collective enterprise" does not excuse MassMutual from alleging actual control of CSC by Kurland. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (plaintiff must show "defendant exercised actual power or control over the primary violator"). Although indirect control may in some circumstances suffice to state a claim for control person liability, sufficient indicia of control must be present. Indeed, even an allegation that a defendant is a "CEO or other high-ranking officer within a company does not create a presumption that he or she is a 'controlling person'" of that same company without sufficient indicia of control, including "whether the person managed the company on a day-to-day basis." *SEC v. Todd*, 642 F.3d 11207, 1223 (9th Cir. 2011) (quoting *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1163 (9th Cir.1996)).

### B. Allegations of Indirect Control of CSC through Countrywide Financial are Insufficient Because Control Person Liability Cannot Be Based Solely on a Tertiary Relationship to the Primary Violator

Courts have rejected the notion that allegations, like the ones here, of indirect control based on a tertiary connection between the primary violator and alleged control person are sufficient to state a claim for control person liability. *See Fezzani v. Bear, Stearns & Co., Inc.*, 384 F.Supp.2d 618, 646 (S.D.N.Y. 2004) on reconsideration in part, 99 CIV. 0793 (RCC), 2004 WL 1781148 (S.D.N.Y. Aug. 10, 2004). In *Fezzani*, the plaintiffs sought to hold a senior officer of Bear Stearns, which in turn allegedly controlled the primary violator, liable as a control person of

the primary violator. *See id.* After dismissing the claims against all of the Bear Stearns defendants as time-barred, the *Fezzani* court provided an additional reason for dismissing the senior officer: "The Court would also dismiss the control person claims against Harriton for failure to state a claim. Plaintiffs[] seek to hold Harriton responsible based on tertiary liability—his control of Bear Stearns, which in turn allegedly controlled Baron. Plaintiffs[] cannot stretch the concept of control liability so far." *Id.* at 646 & n.10. Here, too, MassMutual seeks to stretch the concept of control liability too far, relying on its allegations that Kurland was a senior officer of Countrywide Financial, which in turn allegedly controlled CSC, to plead that Kurland controlled CSC.

MassMutual relies on *In re Tronox, Inc. Securities Litigation*, which distinguished *Fezzani* in part on the ground that the *Tronox* plaintiffs, unlike the *Fezzani* plaintiffs, had made allegations that the officers "*were* the masterminds behind a scheme to defraud that culminated in" the harm alleged. *In re Tronox, Inc. Sec. Litig.*, 769 F.Supp.2d 202, 221 (S.D.N.Y 2011) (emphasis in *In re Tronox*). No such special distinguishing circumstance exists here. Kurland is not specifically named *once* in the paragraphs describing the abandonment of underwriting guidelines on which MassMutual relies heavily in its opposition, much less alleged to be the "mastermind" behind a scheme to defraud. (FAC ¶¶ 141-159.) Indeed, MassMutual does not allege fraud against Kurland, and any allegations of responsibility for any sort of scheme are directed at defendants who have since been dismissed—not Kurland.[4] (*Id.*)

---

[4] Similarly, allegations of control over CSC by other defendants are much more explicit than the allegations against Kurland. (*Compare* FAC, ¶ 557 (alleging that Countrywide Financial "controlled" CSC), ¶ 562 (alleging Angelo Mozilo "controlled the day-to-day operations of" CSC), *and* ¶ 568 (alleging Ranjit Kripalani held senior management positions with CSC) *with* FAC ¶ 426 ("By virtue of his senior management positions, Kurland had the power to control or influence, and did control and influence, Countrywide Financial and its subsidiaries, *particularly CWALT, CWMBS, CWABS, and CWHEQ and, through them, the*
(footnote continued)

1    MassMutual's reliance on *Wells v. Monarch Capital Corp.*, No. 91-10575-
2  MA, 1991 WL 354938 (D.Mass. Aug. 23, 1991), and *In re Charles Schwab Corp.*
3  *Securities Litigation*, 257 F.R.D. 534 (S.D.N.Y. 2009) is also misplaced.
4  MassMutual invokes *Wells* for the proposition that allegations that a director
5  controlled a parent, which in turn controlled a subsidiary, are sufficient to allege that
6  the director indirectly controlled the subsidiary. (Opp. at 9.) But in *Wells*, "[a]ll of
7  the named defendants were Directors of the [subsidiaries] throughout the relevant
8  period." *Wells*, 1991 WL 354938, at *9 and *11. Here, Kurland is not alleged to
9  have been an officer or a director of CSC. *In re Charles Schwab* is also inapposite.
10 Contrary to MassMutual's assertion, the court in that case did not hold that officers
11 of the parent company of a fund were in a position to exercise power and control
12 over the fund, but rather that officers of the fund—many of whom were also officers
13 of the entity that issued the fund's shares, the entity that underwrote and distributed
14 the shares, or the parent companies of those two entities—were in a position to
15 exercise power and control over one of the parent companies and/or the fund's
16 portfolio managers. *In re Charles Schwab*, 257 F.R.D. at 550. The case, which
17 does not present a factual scenario in which an individual defendant is alleged to
18 control a parent that in turn is alleged to control a subsidiary, does not support
19 MassMutual's argument.

20   To allow the control person claim against Kurland to survive based on his
21 control over Countrywide Financial not only lacks support in case law, but would
22 also extend the Court's previous control person rulings in this Multi-District
23 Litigation, in which this Court has typically held that allegations that an individual

---

*Countrywide Trusts*.") (emphasis added) *and* ¶ 565 ("By virtue of his senior management positions, Kurland controlled the day-to-day operations of *one or more primary violators*.") (emphasis added).) The actual allegations against Kurland fall short of the allegations against other individual defendants, who have now been dismissed, and are even farther off the mark of allegations held to be sufficient by this Court and others.

defendant was an officer or director of an entity are sufficient to state a control person claim based on control of *that* entity. *See, e.g.*, *Dexia Holdings, Inc. v. Countrywide Fin. Corp.*, No. 2:11-CV-07165 MRP, 2012 WL 1798997, at *4 (C.D. Cal. Feb. 17, 2012) ("It is a plausible inference that a director or high-level officer of an entity exercised control over *that entity*") (emphasis added); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp.2d 1132, 1201 (C.D. Cal. 2008) (holding that the officer defendants were "plausible control persons who allegedly aided and abetted *Countrywide*'s violations" based on their "positions and responsibilities at *Countrywide*") (emphasis added).

In the only case to have specifically addressed control of a subsidiary where the individual defendant was alleged to be an officer or director of the parent, this Court declined to dismiss a control person claim against a Countrywide Financial officer based on his alleged control of the Issuer Defendants—*limited-purpose* subsidiaries of the parent corporation. *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10-CV-0302 MRP, 2011 WL 4389689, at *14 (C.D. Cal. May 5, 2011). In *Maine State*, the defendant was alleged to be the President and Chief Operating Officer of Countrywide Financial, which in turn "allegedly structured the Issuer Defendants to facilitate the issuance and sale of" mortgage-backed securities. *Id.*

Here, by contrast, CSC was an operational subsidiary that allegedly acted as a registered broker-dealer that underwrote offerings of mortgage-backed securities and was responsible for drafting and disseminating the prospectuses and prospectus supplements that offered the Certificates to investors. (FAC ¶ 16). In fact, CSC served the same role in the securitization process that underwriters not affiliated with Countrywide Financial, such as UBS Securities LLC and Deutsche Bank Securities, Inc., served in many of the securitizations at issue in this action. (FAC ¶¶ 72, 386, 397.) CSC, therefore, was much more independent than the Issuer Defendants, which were limited-purpose subsidiaries structured by Countrywide

Financial for the specific and limited purpose of carrying out Countrywide Financial's issuance and sale of mortgage-backed securities. *See* 2011 WL 4389689, at *14; (FAC ¶¶ 17-20).

MassMutual has not alleged—nor could it—that CSC was merely a limited-purpose or shell entity that did not function independently on a day-to-day basis from its parent. When the parent and subsidiary are independent, functional entities, a ruling that an officer or director of the parent can be presumed to have exercised day-to-day control of the subsidiary would conflate the two separate corporate entities and run afoul of the "bedrock principle" that they should be treated as "separate and distinct entities." *See Scott*, 450 Mass. at 766.

## IV. CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in Kurland's opening memorandum and all other Defendants' opening and reply memoranda, the Court should grant Kurland's motion to dismiss with prejudice.

DATED: July 13, 2012                Respectfully submitted,

CALDWELL LESLIE & PROCTOR, PC
CHRISTOPHER G. CALDWELL
JEANNE A. FUGATE
KELLY L. PERIGOE


By _____/s/_____
      CHRISTOPHER G. CALDWELL
Attorneys for Defendant
STANFORD L. KURLAND