SETH ARONSON (S.B. #100153)
saronson@omm.com
MATTHEW W. CLOSE (S.B. #188570)
mclose@omm.com
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071-2899
Telephone:  (213) 430-6000
Facsimile:  (213) 430-6407

JONATHAN ROSENBERG (*pro hac vice*)
jrosenberg@omm.com
WILLIAM J. SUSHON (*pro hac vice*)
wsushon@omm.com
O'MELVENY & MYERS LLP
Seven Times Square
New York, NY  10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

*Attorneys for Defendants*
*Bank of America Corporation, NB Holdings*
*Corporation, and Bank of America, N.A.,*
*sued in its own name and as successor by*
*July 1, 2011* de jure *merger to BAC Home*
*Loans Servicing, LP (named herein as BAC*
*Home Loans Servicing, LP)*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE COUNTRYWIDE FINANCIAL CORP. MORTGAGE-BACKED SECURITIES LITIGATION | Case No. 2:11-ML-02265-MRP (MANx) |
| | **DEFENDANTS BANK OF AMERICA CORPORATION, NB HOLDINGS CORPORATION, BANK OF AMERICA, N.A., AND BAC HOME LOANS SERVICING, LP'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT** |
| MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | Case No. 2:11-CV-10414-MRP (MANx) |
| COUNTRYWIDE FINANCIAL CORPORATION, *et al.*, | Date:        July 30, 2012 |
| Defendants. | Time:        11:00 a.m. |
| | Courtroom:   12 |
| | Judge:        Hon. Mariana R. Pfaelzer |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

ARGUMENT................................................................................................... 2

   I.     DELAWARE LAW GOVERNS MASSMUTUAL'S
        SUCCESSOR-LIABILITY CLAIMS. .................................................. 2

   II.    THE FAC DOES NOT ADEQUATELY PLEAD A
        SUCCESSOR-LIABILITY OR FRAUDULENT-TRANSFER
        CLAIM. ............................................................................................... 3

   III.   THE FAC SHOULD BE DISMISSED WITH PREJUDICE............... 6

       A.    MassMutual's Proposed New Allegations Would Not
           Cure the FAC's Defects........................................................... 6

       B.    MassMutual's Request for Discovery Should Be Denied.......... 8

CONCLUSION............................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Insurance Co. v. Countrywide Financial Corp.*,
  824 F. Supp. 2d 1164 (C.D. Cal. 2011).......................................................3, 7, 9

*Allstate Insurance Co. v. Countrywide Financial Corp.*,
  No. 2:11-CV-05236-MRP, 2012 WL 335730
  (C.D. Cal. Feb. 2, 2012) .............................................................................*passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 8

*Astra USA, Inc. v. Bildman*,
  914 N.E.2d 36 (Mass. 2009)............................................................................ 2

*Bushkin Associates, Inc. v. Raytheon Co.*,
  473 N.E.2d 662 (Mass. 1985)........................................................................... 2

*Case Financial, Inc. v. Alden*,
  No. 1184-VCP, 2009 WL 2581873 (Del. Ch. Aug. 21, 2009)............................7

*In re Countrywide Corp. Shareholders Litigation*,
  No. 3464-VCN, 2009 WL 846019 (Del. Ch. Mar. 31, 2009) ..........................10

*Cornejo v. JPMorgan Chase Bank*,
  No. CV 11-4119, 2012 U.S. Dist. LEXIS 24222 (C.D. Cal. Feb. 27, 2012).......8

*Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc.*,
  313 F.3d 616 (1st Cir. 2002) ........................................................................... 3

*Dsam Global Value Fund v. Altris Software*,
  288 F.3d 385 (9th Cir. 2002)..........................................................................10

*Gregorio v. Excelergy Corp.*,
  No. 07-2754BLS2, 2008 WL 2875430 (Mass. Super. Ct. July 19, 2008)...........3

*Harrison v. NetCentric Corp.*,
  744 N.E.2d 622 (Mass. 2001)........................................................................... 2

*Heilbrunn v. Sun Chemical Corp.*,
  146 A.2d 757 (Del. Ch. 1958), *aff'd*, 150 A.2d 755 (Del. 1959).........................5

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................... 3, 8

*Lanee Great Plastic Co. v. Handmade Bow Co.*,
  No. SUCV200705245, 2010 WL 6650330
  (Mass. Super. Ct. Dec. 26, 2010) ......................................................... 4

*Maine State Retirement System v. Countrywide Financial Corp.*,
  No. 2:10-CV-0302-MRP, 2011 WL 1765509
  (C.D. Cal. Apr. 20, 2011) ............................................................. 4, 5, 9

*Mindlab Media, LLC v. LWRC International, LLC*,
  No. CV 11-3405 CAS, 2012 U.S. Dist. LEXIS 14769
  (C.D. Cal. Feb. 6, 2012) ..................................................................... 8

*Nna v. Wabtec Corp.*,
  No. 06-11950-DPW, 2008 WL 1720943 (D. Mass. Mar. 31, 2008) .................. 2

*O'Connor v. 11 W. 30th Street Rest. Corp.*,
  Nos. 94 Civ 2951 (LMM), 93 Civ. 8895 (LMM), 1995 WL 354904
  (S.D.N.Y. June 13, 1995) .................................................................... 4

*United States v. Davis*,
  261 F.3d 1 (1st Cir. 2001) .................................................................... 2

*Vess v. Ciba-Geigy Corp., USA*,
  317 F.3d 1097 (9th Cir. 2003) .............................................................. 3


STATUTES AND RULES

17 C.F.R. § 210.3A-02(a) ........................................................................ 7

Fed. R. Civ. P. 8 ................................................................................... 8

Fed. R. Civ. P. 9(b) ........................................................................... 3, 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**OTHER AUTHORITIES**

Accounting Standards Codification, Topic 810 Consolidation,
810-10-15-10(a) (Fin. Accounting Standards Bd. 2009) ...................................7

Consolidation of All Majority-Owned Subsidiaries,
Statement of Financial Accounting Standards No. 94
(Fin. Accounting Standards Bd. 2008)..................................................................7

Restatement (Second) of Conflict of Laws § 188 ....................................................2

Restatement (Second) of Conflict of Laws § 302 ....................................................2

# INTRODUCTION[1]

MassMutual concedes in its opposition that the FAC does not state a claim against the BofA Defendants under this Court's decision in *Allstate II*.[2]  In fact, this case is indistinguishable from *Allstate*.  Delaware law governs MassMutual's successor-liability claims, just as it did in *Allstate*, because Massachusetts has adopted the internal-affairs rule.  In so doing, it rejected the "most significant relationship" test (which MassMutual urges the Court to apply) for cases involving internal corporate affairs.  Also like Allstate, MassMutual asserts *de facto* merger, assumption-of-liabilities, and fraudulent-transfer claims—each based on allegations nearly identical to Allstate's.  MassMutual even tries to defend those admittedly inadequate allegations using the same argument and authority as Allstate.

MassMutual's request for leave to add more allegations—all of which it could have included in the FAC, but apparently decided against—is no more successful.  MassMutual primarily seeks to allege additional examples of BAC's supposedly paying Countrywide obligations or reserving for potential Countrywide losses—allegations that this Court held insufficient in *Allstate II*.  Completing its *Allstate* redux, MassMutual requests leave to take discovery before it has stated a claim—a request this Court denied in *Allstate*, thereby joining many other courts that have refused to let plaintiffs avoid the Federal Rules' pleading requirements by taking discovery before adequately stating a claim.  There is no basis to deviate

---

[1]   This reply uses the terms defined in the BofA Defendants' opening Memorandum of Points & Authorities in Support of Motion to Dismiss Amended Complaint ("Mem.").  "Opp." shall mean MassMutual's Opposition to the Bank of America Defendants' Motion to Dismiss the First Amended Complaint (Dkt. No. 203).  References to "Opening Exhibit" or "Opening Ex. __" are to exhibits to the Declaration of Matthew W. Close in Support of the BofA Defendants' Request for Judicial Notice in Support of Their Motion to Dismiss Amended Complaint.  References to "Reply Exhibit" or "Reply Ex. __" are to exhibits to the Declaration of Matthew W. Close in Support of Their Reply in Further Support of Motion to Dismiss Amended Complaint, submitted herewith.  Unless otherwise specified, all emphasis is added and all internal citations and quotation marks are omitted.

[2]   Opp. at 1; *see also Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-05236-MRP (MANx), 2012 WL 335730 (C.D. Cal. Feb. 2, 2012) ("*Allstate II*").

1   from the Court's rulings in *Allstate II* or to believe that a third attempt to plead a

2   claim against the BofA Defendants will fare any better than the FAC.

3   MassMutual's claims against the BofA Defendants should therefore be dismissed

4   with prejudice.

5                                    **ARGUMENT**

6   **I.     DELAWARE LAW GOVERNS MASSMUTUAL'S SUCCESSOR-
            LIABILITY CLAIMS.**

7

8          As the BofA Defendants showed in their opening brief, Massachusetts has

9   adopted the internal-affairs rule contained in Section 302 of the Restatement

10  (Second) of Conflict of Laws.  (Mem. at 3 (citing *Harrison v. NetCentric Corp.*,

11  744 N.E.2d 622, 628–29 (Mass. 2001) (applying Restatement Section 302's

12  internal-affairs rule to choose Delaware law to govern fiduciary-duty claim

13  involving Delaware corporation)).)  MassMutual's argument that Massachusetts

14  instead follows a "functional" approach that considers a "variety of factors" (Opp.

15  at 3 n.3) is based on a single case that predates *Harrison*, which specifically

16  rejected a "functional approach" in favor of the "certainty, predictability and

17  uniformity of result" that Section 302 promotes.  *Harrison*, 744 N.E.2d at 628–29;

18  *see also Astra USA, Inc. v. Bildman*, 914 N.E.2d 36, 39 n.4 (Mass. 2009)

19  (recognizing Massachusetts's "long-standing policy of applying the law of the State

20  of incorporation to internal corporate affairs").  MassMutual's authority, by

21  contrast, did not involve an internal corporate affair like *de facto* merger, but rather

22  how the statute of frauds applies to an oral contract.  *See Bushkin Assocs., Inc. v.

23  Raytheon Co.*, 473 N.E.2d 662, 671 (Mass. 1985) (applying Restatement Section

24  188's "most significant relationship" test to choose law governing oral contract).

25  MassMutual's other authorities are equally inapposite because they do not

26  (i) involve alleged *de facto* mergers,[3] (ii) consider choice-of-law disputes,[4] or

27  (iii) contain any choice-of-law analysis for successor-liability claims.[5]

28  _____
    [3]     *See United States v. Davis*, 261 F.3d 1, 53–54 (1st Cir. 2001) (successor liability
    for federal CERCLA claim under "mere continuation" theory); *Nna v. Wabtec*

                                         - 2 -

Accordingly, because "the question of whether a *de facto* merger has been effected goes squarely to the structure and internal organization of a corporation," Delaware law, as the law of BAC's, NB's, Red Oak's, and CFC's state of incorporation, governs MassMutual's successor-liability claims under the internal-affairs rule. *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1172 (C.D. Cal. 2011) ("*Allstate I*").

## II. THE FAC DOES NOT ADEQUATELY PLEAD A SUCCESSOR-LIABILITY OR FRAUDULENT-TRANSFER CLAIM.

Although MassMutual argues in conclusory fashion that only Rule 8's pleading standards apply (Opp. at 4), Rule 9(b)'s heightened pleading requirements for fraud allegations also apply because the FAC "sounds in fraud" and alleges a "unified course of fraudulent conduct." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that pleading "as a whole must satisfy the particularity requirement of Rule 9(b)" when it alleges "fraudulent course of conduct," even if fraud is not necessary element). The FAC repeatedly makes conclusory allegations that the BofA Defendants possessed "fraudulent intent" in designing a "single integrated plan to defraud and disadvantage certain creditors." (*See, e.g.*, FAC ¶¶ 452–53, 456.) These allegations bring the FAC within the scope of Rule 9(b).

Accordingly, the FAC must be dismissed unless it alleges with particularity the "who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). MassMutual's opposition

---

*Corp.*, No. 06-11950-DPW, 2008 WL 1720943, at *1 (D. Mass. Mar. 31, 2008) (describing plaintiffs' claim as breach of an "independent duty to warn" of product defect, not a "conventional successor liability theory").

[4]   *See Devine & Devine Food Brokers, Inc. v. Wampler Foods, Inc.*, 313 F.3d 616, 619 n.2 (1st Cir. 2002) (observing that parties agreed on choice of law and district court did not make a "formal choice-of-law determination"); *Davis*, 261 F.3d at 53 n.48 (applying Connecticut law to CERCLA claim based on agreement and because "the parties do not argue that another state's law should apply").

[5]   *See Gregorio v. Excelergy Corp.*, No. 07-2754BLS2, 2008 WL 2875430, at *4–5 (Mass. Super. Ct. July 19, 2008) (applying Massachusetts law without analysis to successor-liability claim).

- 3 -

demonstrates that the FAC does not meet this standard because it relies almost exclusively on FAC paragraphs that appeared nearly verbatim in the *Allstate* amended complaint.  (*See* Mem. Table A (comparing the allegations cited in MassMutual's opposition (FAC ¶¶ 452–56, 459–61, 472, 474–82, 484, 486–87, 492–93, 497–98, 502, 505–06, 517–36, and 538) to their equivalent allegations in the *Allstate* amended complaint).)  Just as in *Allstate II*, these allegations fail to plead, among other things, "either the lack of reasonably equivalent value or fraudulent intent with respect to the asset sales."  *Allstate II*, 2012 WL 335730, at \*13.  Because Delaware law requires fraud allegations to plead a *de facto* merger, MassMutual cannot state a Delaware *de facto* merger claim under any standard. *See Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302 MRP (MANx), 2011 WL 1765509, at \*7 (C.D. Cal. Apr. 20, 2011) ("Thus, in the absence of fraud, it is a long-standing principle of Delaware law that an asset sale is not a merger.") ("*Maine State II*").  MassMutual's assumption-of-liabilities and fraudulent-transfer claims are equally deficient because they too are based on the same allegations as in the *Allstate* amended complaint.[6]  Consequently, MassMutual has no choice but to admit that under *Allstate II*, its allegations "are insufficient to support these claims."  (Opp. at 1.)

The Court has also previously rejected MassMutual's argument that BAC did not provide adequate consideration because it valued Countrywide asset-by-asset, rather than as a going concern.  (Opp. at 5.)  Allstate advanced the same mischaracterization based on the same authority,[7] ignoring that BAC purchased

---

[6] MassMutual's reliance on a New York assumption-of-liabilities case, *O'Connor v. 11 W. 30th St. Rest. Corp.*, Nos. 94 Civ. 2951 (LMM), 93 Civ. 8895 (LMM), 1995 WL 354904, at \*8 (S.D.N.Y. June 13, 1995), is misplaced because "Delaware law applies to [MassMutual's] successor liability claims against Bank of America." *Allstate I*, 824 F. Supp. 2d at 1192; *see also Allstate II*, 2012 WL 335730, at \*11 (citing Third Circuit authority in evaluating assumption-of-liabilities claim).

[7] *See* Pls.' Mem. of Law in Opp. to the Bank of America Defs.' Mot. to Dismiss the Am. Compl. at 6–7, *Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-05236-MRP (MANx) (Jan. 3, 2012) (Dkt. No. 222) (quoting *Lanee Great Plastic*

- 4 -

entire businesses at their equity value.  BAC purchased CFC's interests in, among others, CHLS, Countrywide's servicing business, and CW Bank, which by the FAC's own allegations was "the largest Countrywide subsidiary . . . essential to Countrywide's mortgage business," and housed "substantially all of [Countrywide's] loan production activities."  (FAC ¶ 483.)  The FAC alleges that CFC received more than $23.3 billion from BAC for these businesses, on top of the additional billions that CFC received for its other assets, as the FAC, the undisputed public record, and this Court have all described.  (FAC ¶¶ 475, 481–82; Opening Exs. 1 & 2; *Allstate II*, 2012 WL 335730, at *2.)  As the Court held, these allegations describe adequate consideration that precludes a *de facto* merger or fraudulent-transfer claim because they

> do not contain any indication that any other market for these assets existed, or what the assets' "true" market value was, or what the accounting value of the assets was, or why the Court should disregard the very concrete intangible benefit that proceeds from the asset sales were used to pay off debt, increase working capital, and otherwise allow Countrywide to remain in business.

*Allstate II*, 2012 WL 335730, at *7, *12.  Far from "preventing" such asset sales, as MassMutual contends (Opp. at 6), Delaware *de facto* merger law expressly allows asset sales like these for fair consideration.[8]

---

*Co. v. Handmade Bow Co.*, No. SUCV200705245, 2010 WL 6650330, at *5–6 (Mass. Super. Ct. Dec. 26, 2010) (cited in Opp. at 5–6)).

[8]   *See Maine State II*, 2011 WL 1765509, at *8 ("Because Plaintiffs have not alleged that CFC did not receive and hold adequate consideration for its assets, Plaintiffs have not properly alleged *de facto* merger."); *see also id.* at *7 (citing *Heilbrunn v. Sun Chemical Corp.*, 146 A.2d 757, 760 (Del. Ch. 1958) (dismissing *de facto* merger allegations for failure to allege insufficient consideration), *aff'd*, 150 A.2d 755 (Del. 1959)).

### III.   THE FAC SHOULD BE DISMISSED WITH PREJUDICE.

#### A.   MassMutual's Proposed New Allegations Would Not Cure the FAC's Defects.

MassMutual does not dispute that it essentially copied the *Allstate* amended complaint's allegations in November 2011 and chose to stand on those allegations even after the Court's *Allstate II* decision in February 2012.  Nearly five months later, MassMutual now concedes that it faces a similar result and seeks leave to add allegations that it could have included in the November 30, 2011 FAC.  But as MassMutual apparently concluded at the time, those allegations likewise do not state a successor-liability claim.

The first proposed allegation concerns a September 9, 2010 proof of claim that CHL filed in an unrelated bankruptcy that incorrectly states that BANA is CHL's successor.  (Opp. at 8–9.)  This obviously was an error—while BANA is in fact the successor by *de jure* merger to CHLS and CW Bank, it is not the successor to CHL.[9]  MassMutual's attempt to parlay a single erroneous and unrelated bankruptcy filing into wide-ranging successor liability—for which it cites no authority—no more states a claim now than it did in November 2011, when MassMutual decided not even to mention the proof of claim in the FAC.

The second category of allegations that MassMutual seeks leave to add— more supposed examples of BAC's paying Countrywide's obligations and reserving for potential Countrywide liabilities—is more of the same allegations that the Court rejected in *Allstate II*.  (Opp. at 9–10.)  As the Court has previously observed, "[t]he fact that Bank of America has voluntarily paid certain debts of Countrywide does not mean that it was legally obligated to pay them, nor that it is

---

[9]   *See* BAC Form 10-Q (Aug. 4, 2011), Reply Ex. 1 at 8 (noting "[BAC Home Loans Servicing, LP] . . . merged with and into Bank of America, N.A. (BANA) in July 2011"); BAC Form 10-Q (May 7, 2009), Reply Ex. 2 at 12, 13 ("Effective April 27, 2009, Countrywide Bank, FSB converted to a national bank with the name Countrywide Bank, N.A. and immediately thereafter merged with and into Bank of America, N.A., with Bank of America, N.A. as the surviving entity.").  CHL is investigating the procedure for amending its proof of claim to correct this error.

1  legally obligated to pay others." *Allstate II*, 2012 WL 335730, at *11. And

2  MassMutual cites no authority "for conflating a present intent to voluntarily pay the

3  debts of another with a legal assumption of those debts." *Id.*

4       Equally meritless is MassMutual's argument that BAC assumed potential

5  Countrywide liabilities by reserving for them on its financial statements. (Opp. at

6  9–10.) As the Court observed in *Allstate II*, "it is paradoxical and unwarranted to

7  use the fact that a company has taken a litigation reserve expense as proof of the

8  company's liability." *Allstate II*, 2012 WL 335730, at *11. MassMutual tries to

9  re-litigate that conclusion by arguing that a reserve does not necessarily prove

10  liability, but instead shows BAC's responsibility for any Countrywide liability. But

11  because federal law requires BAC to file consolidated financial statements,[10] a

12  reserve entry indicates nothing about which entity—BAC or any one of its many

13  subsidiaries, like CFC and CHL—booked the reserve.[11] Thus, a reserve on BAC's

14  consolidated financial statement is no different than other BAC statements that this

15  Court has held merely "accurately reflect the structure of the transaction, in which a

16  Bank of America subsidiary purchased CFC. That transaction included all of

17  CFC's assets and liabilities . . . ." *Allstate I*, 824 F. Supp. 2d at 1192.

18

19

20

---

21  [10]  *See* 17 C.F.R. § 210.3A-02(a) ("Generally, registrants shall consolidate entities that are majority owned and shall not consolidate entities that are not majority

22  owned."); Accounting Standards Codification, Topic 810 Consolidation, 810-10-15-10(a) (Fin. Accounting Standards Bd. 2009) ("All majority-owned

23  subsidiaries—all entities in which a parent has a controlling financial interest—shall be consolidated."); Consolidation of All Majority-Owned Subsidiaries,

24  Statement of Fin. Accounting Standards No. 94, ¶ 1 (Fin. Accounting Standards Bd. 2008) ("The purpose of consolidated statements is to present, primarily for the

25  benefit of the shareholders and creditors of the parent corporation, . . . the financial position of a parent company and its subsidiaries essentially as if the group were a

26  single company.").

27  [11]  *See, e.g.*, *Case Fin., Inc. v. Alden*, No. 1184-VCP, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009) (holding that parent corporation's filing "consolidated

28  financial statements with the SEC, which include [subsidiary's] results" did not satisfy Delaware law's "substantial burden" for disregarding corporate form).

**B.     MassMutual's Request for Discovery Should Be Denied.**

Unable to propose allegations that would state a claim, MassMutual, like Allstate before it,[12] also requests leave to take discovery in search of a claim.  (Opp. at 10–14.)  But under both Rule 8 and Rule 9(b), plaintiffs must first allege facts that state a claim before they are entitled to discovery.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (observing that one of Rule 9(b)'s purposes is "to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'"); *Mindlab Media, LLC v. LWRC Int'l, LLC*, No. CV 11-3405 CAS (FEMx), 2012 U.S. Dist. LEXIS 14769, at *15 (C.D. Cal. Feb. 6, 2012) ("Further, plaintiffs' contention that 'discovery will reveal evidence showing that [defendant] engaged' in wrongful conduct is precisely what the Supreme Court seeks to avoid: 'Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.' " (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009))).[13]  MassMutual's allegations suffer from the same infirmities as Allstate's, and the Court should therefore deny MassMutual's discovery requests for the same reasons that it declined Allstate's discovery overture.

MassMutual's document requests and conclusory relevance justifications provide no reason to believe that MassMutual can overcome the "real problem" that this Court has recognized with other plaintiffs' identical successor-liability theories:

---

[12]   *See* Pls.' Mem. of Law in Opp. to the Bank of America Defs.' Mot. to Dismiss the Am. Compl. at 9 n.7, 14 n.9, 18 n.12, 23, *Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-05236-MRP (MANx) (Jan. 3, 2012) (Dkt. No. 222); Tr. at 99:21–100:8, *Allstate Ins. Co. v. Countrywide Fin. Corp.*, No. 2:11-CV-05236-MRP (MANx) (Sept. 21, 2011) (THE COURT: ". . .[Y]ou do understand that that's what we are looking at here, whether what you can say warrants your taking discovery.").

[13]   *See also Iqbal*, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."); *Cornejo v. JPMorgan Chase Bank*, No. CV 11-4119, 2012 U.S. Dist. LEXIS 24222, at *13 (C.D. Cal. Feb. 27, 2012) (dismissing claims with prejudice under Rule 9(b) because "[p]laintiffs' assertion that they will 'not know until discovery' " the defendant's specific conduct "is precisely what Rule 9(b) seeks to prevent").

1  "[W]hat really stands in the way are a lot of public documents, judicial proceedings.

2  . . . This is not a pleading problem, this is a real problem."[14]

3       • MassMutual requests BAC balance sheets and income statements

4          merely because they contain unspecified "nonpublic financial facts"

5          that are for some unexplained reason "necessary" to MassMutual's

6          claim.  (Opp. at 10–11.)  Nowhere does MassMutual describe the facts

7          it supposedly needs, state why the requested documents will contain

8          them, or explain how they would overcome the "contemporaneous

9          SEC filings,"[15] the Court's prior rulings,[16] and the FAC's own

10         allegations,[17] all demonstrating that CFC received and retained billions

11         of dollars in consideration for the assets it sold to BAC.

12      • Equally conclusory is MassMutual's blanket request for documents

13         underlying the Capstone and Daines reports, on which the FAC relies,

14         which the Bank of New York submitted in connection with the

15         proposed settlement of Countrywide repurchase claims.  (Opp. at 11–

16         12.)  Because the Capstone and Daines reports, by MassMutual's own

17         description, addressed "the viability of a successor liability claim,"

18         there is no reason to believe that the underlying documents contain any

19         pertinent information that the reports do not already incorporate.

20         MassMutual's contention that the documents would somehow show

21         the Countrywide assets' "true market value" (Opp. at 12) is pure

22

23  [14]   Opening Ex. 4 at 50–51.

24  [15]   *Maine State II*, 2011 WL 1765509, at *8 (observing that "contemporaneous SEC filings make clear" that Countrywide received "valuable consideration totaling billions of dollars").

25  [16]   *See id.*; *Allstate I*, 824 F. Supp. 2d at 1192; *Allstate II*, 2012 WL 335730, at *12

26  ("To summarize, Allstate has pleaded no facts from which the Court could infer that the compensation in the LD1 and LD100 transactions was not reasonably

27  equivalent.").

28  [17]   FAC ¶¶ 475, 481–82 (describing consideration in July and November 2008 asset sales).

1    speculation—and contrary to the Delaware Chancery Court's finding

2    on a full evidentiary record that no "entity other than [BAC] was

3    interested in (or capable of) acquiring Countrywide" on the open

4    market.  *In re Countrywide Corp. S'holders Litig.*, No. 3464-VCN,

5    2009 WL 846019, at *8 (Del. Ch. Mar. 31, 2009).

6    • MassMutual's request for documents showing Countrywide's

7       litigation loss reserves (Opp. at 12) would not yield relevant

8       information for the same reasons its proposed loss-reserve allegations

9       do not support a successor-liability claim.  (*See supra* at p. 7.)

10   • MassMutual bases its requests for BAC board and committee meeting

11      minutes and documents produced to regulators solely on speculation

12      that they are, respectively, "germane" in some unspecified way "to the

13      structure of the Merger Transactions" and supposedly contain

14      unspecified "nonpublic BAC admissions describing the Merger

15      Transactions."  (Opp. at 13–14.)  As with its requests above,

16      MassMutual does not explain with any detail the facts it seeks, why

17      these documents are likely to contain them, or how those facts would

18      help it plead claims against the BofA Defendants that it has been

19      unable to plead in two prior complaints.

20   MassMutual's stale proposed allegations and fishing-expedition document

21   requests only confirm what the BofA Defendants argued in their opening brief—

22   MassMutual has no meaningful allegations to add and no grounds for requesting a

23   *third* attempt to plead a claim against the BofA Defendants.  Its successor-liability

24   and fraudulent-transfer claims should therefore be dismissed with prejudice.  *See,*

25   *e.g.*, *Dsam Global Value Fund v. Altris Software*, 288 F.3d 385, 391 (9th Cir. 2002)

26   (affirming dismissal with prejudice because plaintiffs "have failed to come forward

27   with additional facts that would meet the . . . pleading requirement").

28

**CONCLUSION**

The FAC does nothing more than recite nearly verbatim the successor-liability and fraudulent-transfer allegations that this Court already found inadequate in *Allstate II*.  Conceding as much, MassMutual requests leave to add allegations no different from those the Court has already rejected.  And its additional request for leave to take discovery—a request this Court denied in *Allstate*—is exactly what the Federal Rules' pleading requirements are designed to prevent.  The FAC's claims against the BofA Defendants should be dismissed with prejudice.

Dated:  July 13, 2012                          Respectfully submitted,

                                                    SETH ARONSON
                                                    MATTHEW W. CLOSE
                                                    JONATHAN ROSENBERG
                                                    WILLIAM J. SUSHON
                                                    O'MELVENY & MYERS LLP

                                                    By:  /s/ Matthew W. Close
                                                           Matthew W. Close

                                                    *Attorneys for Defendants*
                                                    *Bank of America Corporation,*
                                                    *NB Holdings Corporation, and Bank of*
                                                    *America, N.A., sued in its own name and*
                                                    *as successor by July 1, 2011 de jure*
                                                    *merger to BAC Home Loans*
                                                    *Servicing, LP (named herein as BAC*
                                                    *Home Loans Servicing, LP)*

- 11 -